Lorenz G. Schubert v. American Press, Appellant.—19 S. W. (2d) 472.

Division One, July 30, 1929.

*Buder & Buder* and *G. A. Buder, Jr.,* for appellant.

*Davis, Oliver & Brownback* for respondent.

RAGLAND, J.—This is an action for libel. On the 8th day of July, 1922, the Schubert Motor Car Company of St. Louis, a corporation, commenced an action in a district court of the United States against the Fidelity & Deposit Company of Maryland by filing a petition in said court. Upon the filing of such petition and before any action had been taken by the court with reference thereto, the defendant published in "The St. Louis Times," a daily paper of large circulation, the following:

"Bonding Company Sued by Schubert Motor Co.

"Suit to force the payment of a $10,000 bond was today filed in the United States District Court against the Fidelity & Deposit Company of Maryland, with headquarters in Baltimore, by the Schubert Motor Car Company, of 1645 South Grand Avenue.

"The suit grew out of the alleged defalcation of Lorenz G. Schubert, former president of the Automobile Company, who, it is charged, embezzled $15,488.63 over a period extending from September 8, 1920, to December 12, 1921. The bonding company, which was surety for Lorenz for the amount named in the suit, was notified on March 9, 1922, according to the petition, but refused to pay its obligation."

The petition in this case alleges that the matters and things set forth in said publication were published of and concerning the plaintiff, that they were false and libelous, and that by reason thereof plaintiff has sustained damages in the sum of $50,000. The answer admits the publication of the article as set forth in the petition and justifies on the ground that the statements contained in the publication were in all respects correct and true. The reply is a general denial.

To justify its publication the defendant assumed the burden of showing that plaintiff embezzled funds of the Schubert Motor Car Company which had come into his possession or under his control as president, treasurer and general manager of that corporation, between September 8, 1920, and December 12, 1921. The salient facts developed by the evidence with respect to this, the only contested issue of fact, will be briefly outlined.

Prior to September 8, 1920, plaintiff had been conducting an automobile sales agency in St. Louis under the name of Schubert Motor Sales Company. On the date last mentioned he and one Pfrimer and one Bevington organized the Schubert Motor Car Company with an authorized capital stock of $32,000, divided into 320 shares of the par value of one hundred dollars each. Bevington contributed to the capital stock $4,000 in cash; Pfrimer, $4,000 in drainage district bonds; and plaintiff, cars (mostly used) and office paraphernalia, all of which he had on hand in connection with his sales agency and which he inventoried to the corporation at $4,135. However, the corporation took over the entire plant, good will, etc., of the Schubert Motor Sales Company, which for the purpose of giving it a paper capital stock of $32,000 it valued at $24,000. An equal number of shares were issued to each of the three incorporators: plaintiff was made president, treasurer and general manager; Pfrimer, vice-president; and Bevington, secretary and chairman of the board of directors. As treasurer plaintiff was required to furnish a fidelity bond in the sum of $10,000 with the Fidelity & Deposit Company of Maryland as surety. For his services as president and general manager he was allowed a salary of $200 per month. No bookkeeper was employed at the beginning, plaintiff keeping an informal record of the corporation's financial transactions through memoranda made from time to time. After some two or three months a bookkeeper was installed and a set of books opened and thereafter kept in due form.

The new corporation bought a carload of automobiles and started off with a flourish, but never succeeded at any time in making expenses, much less a profit for its shareholders. On August 1, 1921, its board of directors by resolution made the salary of the general manager payable thereafter out of earnings only—which was equivalent to cutting it off entirely. By December 1, 1921, financial embarrassment had made the further transaction of business impossible.

Plaintiff as president and general manager had full control of the receipts and disbursements of the corporation's funds: until August 1, 1921, disbursements were made by checks signed by him alone; on that date a resolution was adopted by the board of directors requiring all checks to be signed by both the president and secretary. This requirement, however, was disregarded by the plaintiff and he continued to issue checks over his signature as president as thereto-

fore until December 12, 1921, at which time his connection with the corporation seems to have been entirely broken off.

Plaintiff was never paid his salary in regular monthly installments: the amount, $200 per month, was merely a credit against which he drew from time to time such sums as he required for his personal use.

In December, 1921, Bevington, the secretary, had one Brennan, an expert accountant, audit the corporation's books. According to the audit then made plaintiff, on December 12, 1921, had drawn $705.04 in excess of his salary credits. Shortly thereafter a second audit was made by another accountant, Lange. Lange's statement showed that on December 12, 1921, plaintiff was overdrawn $283.81. Lange, it seems, declined to charge plaintiff with certain disputed items which were not shown by the books or by any other documentary evidence, and which Brennan had included in his audit.

The Motor Car Company took over and in a way continued the business of the Motor Sales Company. At the time of the transfer the latter company was running an advertisement in a local paper for which it was to pay at the rate of two dollars per month. On September 14, 1920, an account for such advertising, covering the months of August and September and amounting to four dollars, was paid by plaintiff with a check drawn against the Motor Car Company's funds in bank. The disposition made of two other accounts is stressed. One was for telephone service from August 20, to September 20, and the other for insurance on automobiles which in point of time extended from before the transfer of the property until afterward: a part of the telephone account and possibly all of the insurance charge should have been paid by the Motor Sales Company, but plaintiff paid both in full with the Motor Car Company's checks. It does not appear that plaintiff caused any part of the three items mentioned to be charged to himself on the Motor Car Company's books; neither is there anything in the evidence affirmatively showing that such failure was motivated by an intention to defraud; it could have resulted from mere carelessness or inadvertence.

At the trial plaintiff contended that the corporation owed him a balance, notwithstanding he had drawn funds in excess of his salary. The basis of his contention was this: he sold to the corporation the tangible property of his Motor Sales Company for $4,135 and its good will for $500, totaling $4,635; as his contribution to the capital stock was to be only $4,000 there was $635 due him on account of the sale. Bevington on the contrary insisted that plaintiff had guaranteed that he would sell the property which he had turned over to the corporation for not less than $4,000 in cash and that he had failed to do so, the sum realized being two or three hundred dollars less than the amount guaranteed.

The foregoing is the sum and substance of the evidence offered on the issue of embezzlement.

On the trial below there was a verdict for defendant. Subsequently the court on plaintiff's motion set the verdict aside and entered an order granting him a new trial. From that order defendant prosecutes this appeal.

The motion for a new trial was sustained on the ground that the giving of defendant's Instruction 9 was error. The instruction was as follows:

"The court instructs the jury that if you find and believe from the evidence that between September 8, 1920, and December 12, 1921, the Schubert Motor Car Company was an incorporated company, that plaintiff was then over sixteen years of age, that the plaintiff was an officer, agent and servant of said Schubert Motor Car Company, that between said dates the plaintiff, without the assent of said Schubert Motor Car Company, took and made away with money, goods or funds not belonging to him which came into his possession or under his care by virtue of his employment and office as aforesaid, and that plaintiff did so with intent to convert the said money, goods or funds to his own use, and did convert the same to his own use, then your verdict should be for the defendant."

For the plaintiff the court instructed the jury that "unless you find and believe from the evidence that plaintiff fraudulently converted to his own use money or property of the Schubert Motor Car Company, then in his possession as an officer of such company, with the intent to permanently deprive the said Schubert Motor Car Company thereof, you should find for the plaintiff, if you further find that the publication in evidence was libelous." This instruction is designated in the record as No. 6. The plaintiff requested, but the court refused, his Instruction H, which was as follows:

"If you believe and find from the evidence that plaintiff drew funds from the Schubert Motor Car Company under a bona-fide claim of right, then no embezzlement was committed in respect thereto, however unfounded or mistaken such claim may have been."

In support of its contention that the court erred in sustaining plaintiff's motion for a new trial, appellant asserts the following propositions:

"1. Instruction 9 is a correct declaration of law, and no error was committed in giving and reading it to the jury.

"2. Even though Instruction 9 was in and of itself incorrect, the error was neutralized and rendered harmless by the court's action in giving and reading to the jury Instruction 6.

"3. Even though Instruction 9 was in and of itself incorrect, and even though the error was not cured and removed by Instruction 6 nevertheless the court should have overruled the plaintiff's motion

for a new trial because, notwithstanding the error, if any, in the instruction, the verdict and judgment were for the right party and the plaintiff should, in no event, be permitted to recover.''

I. It is conceded that the publication complained of contained statements to the effect that plaintiff, without the assent of the Schubert Motor Car Company, had embezzled money and funds belonging to that corporation which had come into his possession or under his care as its president—acts which under and by virtue of the provisions of Section 3327, Revised Statutes 1919, constituted a crime. The truth of those statements was pleaded as a complete defense to this action: the answer averred ''that the statements . . . charging him (plaintiff) with having committed defalcation and having embezzled funds and money of the Schubert Motor Car Company, a corporation, while he was president thereof, over a period extending from September 8, 1920, to December 12, 1921, were and are true.'' When a libel imputes the commission of a crime, and a plea of justification is interposed, the defendant must fasten upon the plaintiff all the elements of the crime both in act and intent. Defendant's Instruction 9 was successfully challenged on the motion for a new trial in the court below on the ground that it did not include in the submission under it all the elements of the crime of embezzlement as defined by said Section 3327.

The section just referred to consists of two subdivisions, each creating a separate and distinct offense. The first provides that ''if any officer . . . of any incorporated company . . . shall embezzle or convert to his own use . . . without the assent of his master or employer, any money, etc., belonging to any other person, which shall have come into his possession or under his care by virtue of such . . . office, he shall, upon conviction, etc.'' The second refers to a different state of facts: the taking, making away with or secreting the money or property of another, with the intent to embezzle or convert to one's own use. [State v. Lentz, 184 Mo. 223, 83 S. W. 970; State v. Larew, 191 Mo. 192, 89 S. W. 1031.] The offense created by the first subdivision, that of actual embezzlement, is the one which the libel imputes to plaintiff and the one with respect to which defendant assumed the burden of proving the truth in justification. The instruction under consideration attempted, apparently, to cover both offenses. The part referring to the taking or making away with, with intent to convert to his own use, may be treated as surplusage. Omitting that portion, the instruction told the jury in substance that, if plaintiff, without the assent of the Schubert Motor Car Company, did convert to his own use money, goods or funds not belonging to him which came into his possession

or under his care by virtue of his employment and office, their verdict should be for the defendant. The language of the statute is, "embezzle or convert to his own use." "Embezzle" and "convert" are not synonymous terms: embezzlement is a fraudulent appropriation of another's property by a person to whom it has been entrusted or into whose hands it has lawfully come; but the term "convert" does not imply an evil intent. To constitute embezzlement it is necessary that there shall be a criminal intent: where the statute is silent on the subject, the necessity for such an intent is to be implied. [State v. Pate, 268 Mo. 431, 188 S. W. 139; State v. Burgess, 268 Mo. 407, 188 S. W. 135.] "Embezzle" is not found in the instruction. "Convert" alone is used, and that without being qualified in any way by words importing a criminal intent. The instruction therefore defines a civil conversion, as distinguished from a criminal or fraudulent conversion. [State v. Pate, supra, l. c. 442.] For that reason a verdict rendered under its guidance does not establish the truth of the matters pleaded in justification of the libel.

II. The next contention is that the defect in defendant's Instruction 9, in its failing to require the finding of a fraudulent or criminal intent, was cured by plaintiff's Instruction 6. It is true, as appellant asserts, that all instructions must be read and considered together as a single direction to the jury. But the rule is without avail here. The main instruction, 9, which purports to cover the entire case and hypothesize all the facts which are essential to the verdict which it directs, wholly omits a necessary fact, and a separate instruction, 6, requires the jury to find the fact so omitted. Such instructions serve to confuse rather than to aid the jury. [Hall v. Coal & Coke Co., 260 Mo. 351, 369, 168 S. W. 937.] The rule of decision applicable to the situation presented by the two instructions under consideration, and the grounds upon which it is based, find apt statement in Bellows v. Insurance Company, 203 S. W. 978, 985, where it is said:

"This action has no relation to those cases when a general instruction states in general terms all the elements necessary to authorize the verdict asked, but fails to specify particulars fairly included within those terms. In such cases the opposing party may or may not, as he choses, ask a further specification of omitted details. An instruction which expressly directs the jury to return a particular verdict upon finding a particular fact is not rendered harmless by one which tells them not to return such a verdict without proof of another fact, because it is impossible to obey both unless that other fact be found. It is a doctrine, reeking with danger, which imposes upon them the duty of making such a choice."

Appellant's contention under this head is disallowed.

III. Appellant's third contention is based on the view that, plaintiff having admitted on the witness stand that the items for advertising, telephone service and insurance, heretofore referred to, were in, whole or in part his individual debts and that he paid them with the funds of the Motor Car Company, his own admissions convict him of embezzlement. Had he charged himself on the books of the corporation with the funds so used, to the extent that they were applied to the payments of his individual debts, it would have been according to the usual and authorized course of dealing between himself and the company. But his failure to so charge himself does not warrant the conclusion of law that he fraudulently appropriated the funds with the intention of permanently depriving their owner of its property. Nor can such conclusion be drawn from any of the other facts and circumstances disclosed by the evidence. The question of criminal intent was for the jury.

One of the grounds assigned by plaintiff in his motion for a new trial was the court's refusal to give his Instruction H. The instruction should have been given; the facts hypothesized in it negative criminal intent; there was ample evidence upon which to base it.

The order of the circuit court granting a new trial is affirmed and the cause remanded. All concur.