**MUTH, Plaintiff, v. MAXTON et, Defendants.**

Common Pleas Court, Montgomery County.

No. 103721.   Decided February 23, 1954.

Paul G. Muth, Clarence J. Stewart, Dayton, for plaintiff.
E. E. Duncan, Dayton, for defendants.

## OPINION

By McBRIDE, J.:

This matter was submitted to the court on the pleadings, an agreed statement and briefs. The court was also requested

to recognize the findings of the Referee and the decision in the case of Clifford R. Bennett, Plaintiff, v. The Dayton Memorial Park Cemetery Association, et al, Defendants, in Case No. 92612 in the Common Pleas Court of Montgomery County and on appeal in Case No. 2070. For the sake of brevity, the court will briefly state the two principal issues of law submitted in this case and refer to the facts only as required.

At the 1951 annual meeting of the members of The Dayton Memorial Park and Cemetery Association, a non-profit corporation organized under the laws of Ohio, two blocks of votes were offered during the election of officers. The trustees of the association by resolution cast 3565 votes, representing the unsold lots and crypts, title to which was in the name of the association. The plaintiff objects to this practice as "ultra vires, fraudulent and against public policy."

The plaintiff, in turn, held proxies in favor of the trustees of The Dayton Memorial Park Trust which were not voted for the reason that (a) the Trust was not authorized by the agreement in which it was created to vote proxies and (b) that the voting of such proxies by the trustees is "ultra vires, void and contrary to public policy" and contrary to the former decision of this court.

It was agreed that these two questions determine the major issues in this case.

Aside from the fact that the Association owned the 3565 lots, the only justification for the exercise of voting rights by the corporation appears in the first paragraph of Article Two of the by-laws which provides that

"The ORGANIZERS OF THIS ASSOCIATION and any person, organization, firm or corporation who becomes the owner of a lot in the Dayton Memorial Park and Cemetery is ipso facto, a member."

The third paragraph of the same article requires a membership to be evidenced by a certificate showing the number of lots owned by the holder and requires the certificate to be exhibited at all elections. Several possibilities arise as a result of these provisions, however, they are not developed in the agreed facts and they are over-shadowed by the first basic question. What right does a non-profit cemetery association or its organizers have to vote unsold lots at an annual election of trustees?

The case of Commonwealth v. Fisher, 2 Brewster's Reports 394, 7 Phila. 264, in the court of common pleas of Philadelphia County, Pennsylvania (1868) presents a similar situation and the only reported case we have located. The syllabus reads:

"Where the charter and by-laws of a cemetery company provided that every person being the purchaser of one or more

of the burial lots, and subscribing to the articles and by-laws, should become a member of the company, and be entitled to one vote for every lot so purchased, it was held that the trustees of said company had no right as such to cast a number of votes equal to the unsold lots remaining in their hands. They could only vote as purchasers of burial lots the same as other persons."

This case points out that the interests of the trustees of the association and that of its organizers are separate, distinct, and adverse, to a degree and in many respects from those of the purchasers of lots. It will be observed that the court reached its conclusion independently of statute. Even in the absence of statute, it is well settled that it is contrary to public policy for a corporation to vote such stock owned or held by a corporation. Davies Ohio Corporation Law, p. 759; 18 C. J. S. 1241.

Accordingly, the court finds that where by-laws of an incorporated cemetery association provide that a lot owner is a member and entitled to as many votes as lots registered in his name, the trustees of the association are not authorized to vote unsold lots in the name of the association. Any provision of the by-laws which may be construed as authorizing trustees of an incorporated cemetery association to vote unsold lots appearing in the name of the association is void.

There is no provision regulating voting "treasury" stock, use of proxies or voting by fiduciaries in the sections of the code relating to corporations not for profit. Such provisions are a part of the general corporation act. It is a general rule of statutory construction that an act should be construed in its entirety. All sections of the general corporation act should be construed as a whole. This is particularly true when a failure to do so would completely avoid legislation and result in court made law. **37 O. Jur., Section 331 et seq. p. 594.** Consequently, it is the opinion of the court that wherever applicable, all sections of the general corporation act control the activities of corporations not for profit as well as corporations for profit.

**Sec. 1701.60 (C) R. C.,** which prohibits any corporation from directly or indirectly voting upon any shares issued by it, by analogy prohibits a non-profit cemetery association from voting its unsold lots.

**Sec. 1702.11 R. C.** states that unless otherwise provided in the articles or the code of regulations, no member of a non-profit corporation shall vote or act by proxy. Article Three, paragraph (d) of the by-laws of the cemetery association authorizes members to vote by proxy. The printed proxy

submitted with the agreed statement of facts is a blank form appointing the trustees of the Dayton Memorial Park Trust, or either of them as agent to vote at any meeting of lot owners of the cemetery association. It further provides: "Said proxy to continue in full force and effect from year to year from the date hereof, until revoked by the undersigned."

The stipulations indicate that the Park Trust was organized as a "business trust" in 1926 and that it entered into an agreement with the incorporated cemetery association, which it organized and promoted, to develop land for cemetery purposes. Title to the lots was retained by the trust. When a lot was sold, the purchaser became entitled to vote in the corporation. In many instances over the years, purchasers delivered proxies to the trustees of the Park Trust. These proxies were voted by the trustees as long as the purchasers did not revoke them or appear in person at meetings of the corporation. Therefore, it is apparent without examining exhibits not entered in the stipulation that these proxies are many years old.

**Sec. 1701.61 R. C.** provides in part that "no appointment of a proxy made after June 9, 1927, shall be valid after the expiration of eleven months after it is made unless the writing specifies the DATE on which it is to expire or the length of TIME it is to continue in force." The proxy in favor of the Park Trust is in the form of a permanent appointment, continuing perpetually in full force and effect until revocation It fails to specify either a date on which it is to expire or the length of time it is to continue in force. 1935 A. G. Opns. No. 4811. Within the meaning and intent of §1701.61 R. C., the Park Trust proxy (Exhibit C) automatically terminated and became invalid at the expiration of eleven months after it was made.

It is argued on behalf of the Park Trust that if the proxies are proper as to form, the exercise of the right of a fiduciary to vote proxies is justified by §1701.59 R. C. of the General corporation act. This section provides that fiduciaries may vote shares which stand of record in their names and shares not of record in their names upon satisfactory proof of their authority to so vote.. Sub-section (E) expressly provides that the exercise of the powers conferred by this section does not enlarge or affect the right or obligations of any fiduciary with respect to any person other than the corporation issuing such shares. This section does not enlarge the powers of trustees of an express trust.

There is a substantial difference between the right of a fiduciary to vote shares owned by the trust and a proxy to

vote shares in which the trust has no interest. A trustee or fiduciary is not an agent, but a person in whom there is vested, for the benefit of another, some estate, interest or power in or affecting property. A trustee has no principal. One who holds a proxy is an agent who represents and acts for his principal.

In this case, the fiduciaries obtained and voted proxies from strangers to the trust. Their right to act as agent for others in connection with the trust property cannot be justified by §1701.59 R. C. Such right is determined by the general law governing the conduct of persons in a fiduciary capacity and the facts and circumstances of the particular situation.

The proxies appointing the trustees of the Dayton Memorial Park Trust were used to make up a quorum and elect trustees of the cemetery association prior to and during the Bennett case from 1941 to 1949. A copy of the trust proxy was introduced as Exhibit No. 145 and it is argued that the right of the trustees to vote the proxies was determined in that case. A review of that record reveals that no issue or determination was made therein of the voting rights or practices of the trust or of the association.

The Referee did find that the trustees had general powers not specifically limited in the instrument, however, there is no expression in the trust agreement granting authority to the trustees to solicit, accept and vote proxies of lot owners who have purchased from the trust and who have no interest other than as members of the incorporated cemetery.

Generally, a trustee is only required to exercise that degree of care and skill which an ordinarily prudent person would exercise in dealing with his own property, however, the degree of good faith required of the trustee is by no means that of the ordinarily prudent person. The highest degree of good faith is a well established rule. It prohibits the trustee from gaining any personal advantage or from accepting any responsibility inconsistent with his duty to the trust. Ordinary rules of fraud or undue influence do not apply where there is a fiduciary relationship. The trustee is required not only to avoid "actionable fraud" but also circumstances which are improper or suggest the appearance of fraud, lack of loyalty, personal benefit or the like.

As suggested by counsel, the court has considered not only the facts stipulated, but for the sake of economy, has reviewed the history of the operation of the business trust and the incorporated association as revealed in the extensive record in the earlier litigation. In that case, the referee and the court found that no "actionable fraud" existed; that the purpose

of the trust was legitimate. It is equally apparent that several factors encouraged and producted the earlier litigation in which many acts were declared void. The incorporated association was "definitely subservient" (p. 62 of the report) to the profit incentive of the trust. The non-profit corporation was without title or right to sell a single lot and operated with insufficient income and capital. The trustees, officers and managers of the corporation and the trust were interlocked (p. 68 and 243 of the report) to the point that the corporation had no opportunity to independently exercise its powers as a separate and distinct body apart from the trust that created it.

Item 20 of the finding of facts and law, appearing on page 243 of the report, recites:

"That there has been overlapping of official personnel in the Park Trust, the Abbey Trust, Care Fund Trustees and the Cemetery Association, which overlapping was apparently natural in the initial stages of the development, but **WHICH OVERLAPPING PERMITTED A CONCERTED ACTION NOT NECESSARILY CONDUCIVE TO FRAUD BUT OBJECTIONABLE IN GENERAL.**" (Emphasis ours.)

The former litigation disentangled the complex situation but failed to remove the cause that produced it. The proxies, perpetual in their nature, represent continuous efforts by the trustees of the Park Trust to use their position as fiduciaries to dominate the corporation indefinitely. If these ancient proxies are still valid, a separate and distinct cemetery corporation independent of the business trust, is an impossibility.

The court is advised that the corporation has failed to acquire the undeveloped trust land as well as the utility tract immediately across from the cemetery, legal title to both of which has apparently reverted to the trust by reason of the failure of the cemetery to meet the escrow conditions imposed by the former order of this court. In view of this fact, it is doubly important that the corporation remain distinct and independent of the trust which still controls its future development as well as the real estate upon which its utility buildings are located.

The case of Commonwealth v. Fisher, 2 Brewster's Reports 394, 7 Phila. 264, is significant in that it points out that the interests represented by organizers of a cemetery and subsequent lot owners are to a "great degree and in many respects" separate and distinct. The fact that both are mutually interested in the welfare of the cemetery does not avoid the separate and distinct nature of their interests.

In determining whether the action of the trustees of the Park Trust was inconsistent with their responsibilities, the

court must accept the purpose and intent of the former order of this court which was designed to separate titles and interests and establish the independence of the corporation for the benefit of its members rather than for the profit of the trust and its officers.

It is immaterial to suggest that separate and distinct interests may never become adverse. It is encouraging temptation to permit a fiduciary to simultaneously serve in another distinct capacity with relation to the subject matter of the trust. The danger inherent in such a situation is that transactions may be declared void. **Stepfield v. I. J. Fulton, 126 Oh St 351; 88 A. L. R. 991.** In the former litigation involving these very parties this court found it necessary to vitiate many transactions. Several unfinished items involving real and personal property still exist between the trust and the corporation. Under such circumstances, a court of equity should not permit the trustees of the Park Trust to resume the dual character of their activities to the detriment of the non-profit cemetery association. To do so would also disregard the purpose and intent of the former order of this court.

It is a well established rule that it is the duty of a trustee not to accept any position or enter into any relation, or do any act inconsistent with the interests or property of the beneficiary. This rule rests upon the principle that as long as the confidential relation exists, the trustee or other fiduciary owes an undivided duty to his beneficiary, and cannot place himself in any other position which would subject him to conflicting duties, or expose him to the temptation of action contrary to the best interests of his original cestui que trust. The rule applies alike to agents, directors, managing officers of corporations as well as technical trustees. The most important phase of this rule is that which forbids trustees and all other fiduciaries from dealing in their own behalf with respect to matters involved in the trust. This prohibition operates irrespectively of the good or bad faith of such dealing. Pomeroy's Equity, Section 1077, Fifth Edition.

The court accordingly finds that where fiduciaries, without express authority and by use of their position of trust, accumulate proxies from lot owners who are strangers to the trust and the fiduciaries continuously use such proxies to control a non-profit cemetery association for the profit of the trust and its officers, the exercise of such proxies by the trustees is contrary to public policy and violates the right of the members of the incorporated association to conduct its affairs.

An entry may be prepared accordingly on the facts submitted and the case continued for further disposition on other issues in this case.