HOWARD L. STEIN, Petitioner, v. CAPITAL OUTDOOR ADVERTISING, INC., AND JAMES A. BRIDGER AND CLAWSON A. HICKS, RESPONDENTS.

(Filed 28 February, 1968.)

1. **Corporations § 4—**

   The execution of a proxy without specifying the length of time for which it is to continue in force nor limiting its use to a particular meeting is invalid after the expiration of eleven months from the date of its execution, G.S. 55-68(b), and does not affect the right to vote the shares at a stockholders meeting held more than eleven months after the proxy is issued.

2. **Same—**

   An agreement whereby a stockholder assigned to another stockholder the right to vote all of the shares owned by the first stockholder did not create a voting trust subject to the provisions of G.S. 55-72 since there was no transfer, nor an intent to transfer, the shares of stock for the purpose of the agreement. G.S. 55-72(a).

3. **Same—**

   G.S. 55-73(a), providing that two or more stockholders may validly contract that the shares held by them shall be voted as a unit for the election of directors, is inapplicable to an agreement which gives one stockholder general voting rights in the shares of another stockholder and which fails to provide that the shares of the two stockholders are to be voted as a unit.

**4. Same—**

    Agreement giving one stockholder voting rights in the shares of another cannot be construed as an agreement by all of the shareholders to treat the corporation as a partnership, G.S. 55-73(b), there being no evidence that the third shareholder of the corporation assented to the voting agreement.

**5. Same—**

    Agreement giving one stockholder an unlimited right to vote the shares of another stockholder is a mere continuing proxy which expires eleven months after the execution thereof, G.S. 55-68(b), and is not an agreement attempting to interfere with the discretion of the board of directors. G.S. 55-73(c).

HUSKINS, J., took no part in the consideration or decision of this case.

APPEAL by respondent Hicks from *Braswell, J.,* at the 24 April 1967 Civil Session of WAKE, docketed and argued as No. 527 at Fall Term 1967.

This is a proceeding instituted under G.S. 55-71 to determine the validity of an alleged election of directors of Capital Outdoor Advertising, Inc., at the special meeting of its stockholders on 5 April 1967. The matter was heard without a jury and the court entered an order setting forth its findings of fact and conclusions of law. It adjudged thereon that the election was null and void and that the petitioner Stein is entitled to vote at all shareholders' meetings six hundred (600) shares of stock purchased by him from Thomas F. Hannon. The sole assignment of error is to the conclusion that Stein is entitled to vote the said shares.

   The court's findings of fact, to which no exception was taken, may be summarized as follows, the two documents in question being quoted in full:

1. The corporation was organized under the laws of this State on 20 April 1966 and for its fiscal year ending 18 April 1967 Hicks was elected president-treasurer, Stein vice president and Hannon secretary.

2. At the time of organization, 51,020.00 shares of stock were issued, of which there were issued to Stein 24,999.80 shares, to Hicks 13,775.40 shares and to Hannon 12,244.80 shares.

3. On the day the corporation was organized, Hannon and Hicks executed two written instruments entitled "Agreement" and "Stock Voting Proxy," respectively, and reading as follows:

    "NORTH CAROLINA      AGREEMENT
    WAKE COUNTY

THIS AGREEMENT, made and entered into this 20 day of April 1966 by and between Thomas F. Hannon, FIRST PARTY, and Clawson A. Hicks, SECOND PARTY;

WITNESSETH:

THAT WHEREAS the parties to this agreement are both stockholders in CAPITAL OUTDOOR ADVERTISING, INC. and WHEREAS both parties hereto participated in the organization of said corporation; and WHEREAS the second party is experienced in the sign advertising business and corporation business, structure, and organization; that said Clawson A. Hicks is President of said corporation and the first party holds special confidence in the ability and integrity of said Clawson A. Hicks to manage, conduct, and operate the business of said corporation and to vote the stock of the first party to the best interest of the first party;

Now, THEREFORE, in consideration of the sum of Five Dollars and other good and valuable consideration and the mutual desires and covenants herein, receipt of which is acknowledged, the first party, said Thomas F. Hannon, hereby transfers and assigns unto the second party, Clawson A. Hicks, the right to vote all of his stock in said corporation, the same consisting of 12,244.80 shares, at any and all meetings of the stockholders of said corporation; that the second party, said Clawson A. Hicks, agrees to vote said stock of the first party, within his reasonable discretion, to the best interest of the business of the corporation and said first party.

WITNESS OUR HANDS AND SEALS THIS 20 DAY OF APRIL, 1966.

THOMAS F. HANNON       (SEAL)
CLAWSON A. HICKS       (SEAL)

WITNESS:   CARL GADDY, JR."

—  —  —  —

"NORTH CAROLINA                    STOCK VOTING PROXY
WAKE COUNTY

KNOW ALL MEN BY THESE PRESENTS that I, the undersigned stockholder in CAPITAL OUTDOOR ADVERTISING, INC., do hereby constitute and appoint Clawson A. Hicks my true and lawful proxy, for me and in my name and stead to attend all meetings of the stockholders of said company, both regular and special, held from this day forward, and at all of said meetings to cast all votes to which my said stock may be entitled upon all ques-

tions coming before said meetings, retaining the right, however, to withdraw this proxy provided said Clawson A. Hicks and the undersigned agree to cancel a certain contract relating to the handling of the voting rights of my said stock, said agreement being dated 20 April 1966, and by executing a withdrawal or proxy of later date or by written notice to said company.

WITNESS MY HAND AND SEAL THIS 20 DAY OF APRIL, 1966.

THOMAS F. HANNON      (SEAL)

WITNESS:   CARL GADDY, JR."

4. Stein first learned of the existence of these documents on 22 February 1967, at which time he was given a copy of each of them.

5. On 24 February 1967, Stein purchased 600 shares of stock from Hannon, which shares were transferred on the books of the corporation, the old certificate issued to Hannon being cancelled and a new certificate being issued to Stein.

6. Following such sale and transfer, Stein was the owner of 25,599.80 shares, Hicks of 13,775.40 shares and Hannon 11,644.80 shares.

7. Hicks, as president, called a special meeting of the stockholders to be held 5 April 1967. Prior to that meeting, Hicks received from Hannon a letter dated 1 April 1967 stating that Hannon thereby revoked the above agreement and the above proxy.

8. On 5 April 1967, such special meeting of the stockholders was held and all three of them were present.

9. At the stockholders' meeting, Hicks made a motion that Stein and Hannon be removed as directors. As president, Hicks ruled that he, Hicks, was entitled to vote his own 13,775.40 shares, the 11,644.80 shares still retained by Hannon and the 600 shares transferred from Hannon to Stein. Hicks, as president, refused to allow Hannon to vote the shares still owned by him and refused to allow Stein to vote the 600 shares acquired by him from Hannon.

10. As a result of votes taken and counted pursuant to such ruling by Hicks, as president, over the objections of Stein and Hannon, Hicks ruled that Stein and Hannon were removed as directors and that Bridger, one of Hicks' nominees, and Stein were elected to fill the resulting vacancies, Stein having nominated himself and exercised the right to cumulate his votes.

11.  The terms to which Hannon and Stein had been originally elected directors not having expired and the notice of the meeting of stockholders not having stated the removal of a director as business to be transacted at the meeting, there were no vacancies on the board of directors at the time of such meeting.

*Jordan, Morris & Hoke for respondent Clawson A. Hicks.*

*Teague, Johnson, Patterson, Dilthey & Clay by Robert M. Clay and Bob W. Bowers for appellee Howard L. Stein.*

LAKE, J.  The documents entitled "Agreement" and "Stock Voting Proxy" were executed contemporaneously as part of a single agreement or plan. They must, therefore, be construed together in order to determine what that agreement or plan contemplated. Apparently, the purpose of the paper designated "Stock Voting Proxy" was to make the one entitled "Agreement" effective, the parties seemingly being of the opinion that without the "Stock Voting Proxy" Hicks would have no authority to vote the stock then standing in the name of Hannon.

G.S. 55-68(b) provides:

> "(b)  A proxy is not valid after the expiration of eleven months from the date of its execution unless the person executing it specifies therein the length of time for which it is to continue in force, or limits its use to a particular meeting, but no proxy, whether or not coupled with an interest or otherwise irrevocable by law, shall be valid after ten years from the date of its execution unless renewed or extended at any time for not more than ten years from the date of such renewal or extension."

The "Stock Voting Proxy" executed by Hannon on 20 April 1966 does not specify the length of time for which it was to continue in force. It is not limited to a particular meeting. Thus, by the terms of the statute, it automatically expired eleven months from 20 April 1966 and, therefore, could not affect the right of anyone to vote the shares to which it applied at the meeting held on 5 April 1967. We need not determine whether the provision in this document that Hannon retained the right to withdraw or terminate it if he and Hicks agreed to cancel the other document entitled "Agreement" would have prevented him from revoking it within its life span of eleven months. It could not extend the life of the proxy beyond that period since this provision is not a specification of the length of time for which the proxy was to continue.

The document entitled "Agreement" likewise contains no pro-

vision as to its intended duration. It recites the receipt by Hannon of $5.00 in consideration for its execution, but the testimony of Hicks is that he actually paid nothing. The document recites that it was executed because of Hannon's special confidence that Hicks had the ability and integrity to operate the business of the corporation and to vote the stock of Hannon to the best interest of Hannon. We note with interest that the only recorded use of the alleged power by Hicks was in his effort to remove Hannon as a director of the corporation and substitute his own nominee. The agreement recites that Hannon "transfers and assigns" to Hicks, for an unspecified time, the right to vote all of the shares then owned by Hannon, which would include the 600 shares subsequently transferred by him to Stein. In return, Hicks agreed to vote the stock "to the best interest of the business of the corporation and said first party," i.e., Hannon.

Obviously, this document does not create a voting trust, so the provisions of G.S. 55-72 do not apply to it. The shares issued to Hannon were not transferred, or intended to be transferred, to Hicks, and the other requirements for a voting trust specified in G.S. 55-72(a) are not present.

G.S. 55-73(a) provides:

"(a)    An otherwise valid contract between two or more shareholders that the shares held by them shall be voted as a unit for the election of directors shall, if in writing and signed by the parties thereto, be valid and enforceable as between the parties thereto, but for not longer than ten years from the date of its execution."

This statute does not apply to the agreement in question. First, the agreement is not limited to the election of directors but applies to all corporate business to be transacted at meetings of the stockholders. Second, the agreement does not provide that the shares standing in the name of Hicks shall be voted as a unit with the shares standing in the name of Hannon. There is nothing in this agreement which purports to restrict the right of Hicks to sell all or any part of his shares as he may from time to time see fit to do. There is nothing in the agreement which purports to restrict a transferee of any shares originally issued to Hicks in the voting of such shares purchased by the transferee from Hicks.

G.S. 55-73(b) provides:

"(b)    * * *    [N]o written agreement, to which all of the shareholders have actually assented, whether embodied in the charter or bylaws or in any side agreement in writing and signed by all the parties thereto, and which relates to any phase of the

affairs of the corporation, whether to the management of its business or division of its profits or otherwise, shall be invalid *as between the parties thereto* on the ground that it is an attempt by the parties thereto to treat the corporation as if it were a partnership or to arrange their relationships in a manner that would be appropriate only between partners. * * * A transferee of shares covered by such agreement who acquires them with knowledge thereof is bound by its provisions." (Emphasis added.)

This statute does not apply to the agreement in question because this agreement was not assented to by all of the shareholders as of the time it was executed, Stein having had no knowledge of it until ten months later and, obviously, was not a party to it. There is no showing that he ever "actually assented" to the agreement between Hannon and Hicks.

G.S. 55-73(c) provides:

"(c) An agreement between all *or less than all* of the shareholders, whether solely between themselves or between one or more of them and a party who is not a shareholder, is not invalid, as between the parties thereto, on the ground that it so relates to the conduct of the affairs of the corporation as to interfere with the discretion of the board of directors * * *" (Emphasis added.)

In *Wilson v. McClenny,* 262 N.C. 121, 136 S.E. 2d 569, this Court held an agreement by promoters that, after they became stockholders, they would use their voting power to procure and continue the employment of an individual by the corporation as its president for a fixed period at a specified salary could not be deemed void as against public policy, nothing else appearing. Speaking through Sharp, J., the Court there said:

"Thus, the Business Corporation Act clearly aligns North Carolina with the majority of jurisdictions which hold that a contract entered into between corporate stockholders by which they agree to vote their stock in a specified manner — including agreements for the election of directors and corporate officers — is not invalid unless it is inspired by fraud *or will prejudice the other stockholders.*" (Emphasis added.)

In the *McClenny* case, *supra,* there was nothing to indicate that, at the time the contract was made, the person to be so employed by the corporation as its president was not then competent to act in that capacity or that the specified salary was excessive. There was

nothing to indicate any purpose of the contract other than to assure that the then nonexistent corporation would, upon coming into existence, have for the specified period the services of a capable executive officer. As this Court there held, under the provisions of G.S. 55-73 (c), such a contract, treated as a contract between shareholders, is not subject to attack on the ground that it interferes with the discretion of the board of directors. However, all that G.S. 55-73 (c) does is to remove an agreement between stockholders from that specific objection to its validity.

G.S. 55-73 (c) does not apply to the agreement involved here. This agreement is unlimited as to the matters upon which it purports to authorize Hicks to vote the shares held by Hannon in a stockholders' meeting, but it has no relation to and does not purport to interfere with or affect any exercise of a power vested in the board of directors. This, together with the recitals in the agreement of the confidence had by Hannon in the integrity of Hicks to vote the shares to the best interest of Hannon, leads us to construe this agreement as a mere continuing proxy, the duration of which is not specified therein. As such, it terminated eleven months after the date of its execution by virtue of G.S. 55-68 (b) quoted above. It, therefore, could have no bearing upon the right of Hicks to vote the shares owned by Hannon and to which the agreement relates, including the 600 shares sold by Hannon to Stein.

These things being true, it is unnecessary for us to determine the effect upon the agreement of Hannon's attempt to revoke it or the effect, as to the 600 shares, of Hannon's subsequent sale of those shares to Stein. The agreement having expired by the passage of time and the force of the statute, there was no error in the conclusion of the trial judge that Stein, the record owner, was entitled to vote the 600 shares at the meeting of the stockholders on 5 April 1967.

Affirmed.

Huskins, J., took no part in the consideration or decision of this case.