AUTO WEST, INC., Charles Bryan, Paul Graff and Norman P. Stephens, Plaintiffs, Counter-defendants, Appellants and Cross-Respondents,

v.

Richard BAGGS, Defendant, Counterclaimant, Respondent and Cross-Appellant.

No. 17984.

Supreme Court of Utah.

Jan. 23, 1984.

plaintiff, consisted of evidence that clearly meets that standard.

Patrick H. Fenton, Cedar City, for plaintiffs, counter-defendants, appellants and cross-respondents.

Nielsen & Senior, Clark R. Nielsen, Richard K. Hincks, Jeffrey M. Jones, Salt Lake City, for defendant, counter-claimant, respondent and cross-appellant.

STEWART, Justice:

This is an appeal by Auto West, Inc., Charles Bryan, Paul Graff, and Norman P. Stephens (appellants) from a judgment awarding them $6,334.12 in damages, and an appeal by Charles Bryan from a judgment awarding Richard Baggs $25,000 damages for slander. The trial court also ruled that certain stock proxies executed by Graff and Bryan in favor of Baggs were irrevocable and valid. On this appeal, Auto West, Bryan, Graff and Stephens contend (1) that the money judgment in their favor was insufficient; (2) that the circuit judge who tried the case was without authority to conduct the case and was biased; and (3) that the trial court erred in ruling that the proxies were valid. Bryan contends that the slander judgment was unsupported by the evidence and contrary to the law.

In 1976, Baggs and a partner purchased a Volkswagen automobile dealership in Cedar City, Utah, and formed Auto West, Inc. Baggs acquired 51 percent of the Auto West stock and his partner acquired the remaining 49 percent. Business was slow,

and by June, 1978, Auto West was in serious financial trouble.

In 1978, Bryan approached Baggs and expressed an interest in the dealership. Bryan told Baggs that he and his two partners, Graff and Stephens, had cash that they could invest in Auto West. After negotiations, Bryan bought a 30 percent interest in Auto West; Graff bought a 25 percent interest; and Stephens bought a 25 percent interest. Baggs' partner sold out his entire interest, and Baggs was left with a 20 percent interest. Baggs continued to work as the Auto West general manager and the dealer-operator. Bryan, Graff, Stephens, and Baggs became officers and directors of Auto West.

Auto West requested Volkswagen's approval of the change in the ownership of Auto West. Volkswagen agreed to execute a dealer agreement on condition that Baggs obtain majority voting rights in the stock. To comply, Graff and Bryan executed irrevocable voting proxies to Baggs for an indefinite period.

Baggs continued to run the business, operating it somewhat informally as if it were a sole proprietorship. He did not record all monetary and other pertinent transactions in the company books; he raised his own pay without consulting anyone; he "borrowed" cash from the corporation; and he billed Auto West for work done on his home and the homes of Bryan and Graff by an Auto West employee.

When Bryan and Graff realized that Auto West had paid for the work on their homes, they requested an accounting from the employee who had done the work so that they could repay Auto West. This request led Bryan, Stephens, and Graff to investigate whether any accounting discrepancies existed; the investigation revealed several improprieties. Bryan, Stephens, and Graff became angry with Baggs because of his accounting practices and came to believe that Baggs had taken monies from the corporation that had not been accounted for.

This investigation occurred while Baggs was on vacation. Before Baggs returned, Bryan, Graff, and Stephens took control of Auto West. A new sales manager was appointed to replace Baggs. Bryan informed some of the employees of Auto West that Baggs had "stolen" or "embezzled" funds belonging to Auto West and that upon his return he would be terminated from his employment. Bryan also told several prominent business people and citizens of Cedar City that Baggs had "taken," "stolen," or "embezzled" large sums of money from Auto West.

When Baggs returned, the board of directors of Auto West met and terminated Baggs from his positions as dealer-operator, executive vice-president, and general manager of Auto West. Bryan and Graff also prepared documents to rescind the irrevocable proxies that they had previously given to Baggs. The locks on Auto West were changed, and Baggs was prevented from entering the premises.

## I.

On December 26, 1979, Auto West commenced an action in the Fifth Judicial Court of Iron County against Baggs for termination of the proxies, an accounting, and a return of all monies improperly taken from Auto West, Inc. The Honorable J. Harlan Burns, District Judge, entered a partial default judgment because Baggs had apparently failed to respond. In reality, however, Baggs had filed a timely motion to dismiss plaintiffs' complaint. When Baggs received notice of the default judgment, he immediately filed a motion to vacate. Thereafter, Judge Burns disqualified himself and signed an order pursuant to U.C.A., 1953, § 78-4-15 (as enacted in 1977), appointing Judge Owens, a circuit judge, to sit as a district judge pro tempore to hear the case.

The appellants filed a motion contending that Judge Owens had not been lawfully appointed to sit on the case. The appellants also sought to disqualify Judge Owens on the basis of prejudice. These motions were denied by another circuit court judge.

Baggs filed an answer and counter-claimed against the appellants, alleging slander. After a bench trial, the trial judge ruled that the irrevocable voting proxies were valid because they were coupled with an interest and entered judgment against Baggs and in favor of Auto West for the value of the items which Baggs had charged to Auto West for his own personal benefit. The judge also awarded Baggs a judgment of $25,000 against Bryan on the slander cause of action.

While this lawsuit has been on appeal, Auto West filed for a Chapter 11 bankruptcy. On April 8, 1982, Auto West executed a stipulation in the bankruptcy proceeding agreeing to cease operation as a Volkswagen dealership. Subsequently, a plan of reorganization for Auto West was approved.

■ The first issue on this appeal is whether the Honorable Robert F. Owens was properly appointed to hear this case. The appellants argue that according to U.C.A., 1953, § 78–3–16,[1] all parties must each agree to the appointment of a judge pro tempore. That rule, however, pertains only if the judge sits pursuant to the terms of § 78–3–16. But § 78–4–15, relied on here by the original district judge, does not require the parties' approval. At the time of the appointment of Judge Owens, § 78–4–15 provided in relevant part:

> Any judge of the circuit court may, at the request of any judge of the district court and with the approval of the state court administrator, sit as a district judge and in those instances shall have the same powers as a district judge.[2]

Judge Owens' appointment to sit as a district judge was lawful pursuant to this section.

Appellants' contention that Judge Owens was prejudiced or biased against appellants is without merit. We find nothing in the record to support the contention.

## II.

We turn next to the appellants' contention that the trial court erred in ruling that the proxies executed by Graff and Bryan in favor of Baggs are valid. The trial judge held the proxies were irrevocable and valid because the proxies were coupled with an interest. The interest was that the proxies were given to protect the interest of all the parties in maintaining the Volkswagen franchise. The appellants argue that U.C.A., 1953, § 16–10–31 made the proxies invalid eleven months after their execution.

At common law, shares had to be voted in person at corporate meetings. 5 Fletcher, *Cyclopedia Corporations* § 2050 (rev. vol. 1976). With time, it became apparent that allowing voting by proxy could serve legitimate interests. Now all states have statutes which authorize proxies. *See generally* 1 *Model Bus. Corp. Act Ann.* § 33, ¶ 3 (2d ed. 1971). However, "the common-law presumption—that sound voting practice follows the self-interest of ownership—still retains much of its vigor, especially as applied to the revocability of a proxy." Comment, *Irrevocable Proxies*, 43 Texas L.Rev. 733, 734 (1965). Traditionally viewed, a proxy creates an agency relationship governed by principles of agency law. Under agency theory, an ordinary proxy is terminable at will.

However, if the proxy is "coupled with an interest," it may be irrevocable. One commonly-accepted view is that an interest sufficient to make a proxy irrevocable has to be "some recognizable property or financial interest *in the stock* . . . as distinguished from an interest in the corporation

---

**1.** Section 78–3–16 states:
Whenever all the parties to any cause pending in a district court or their attorneys of record shall enter into a written stipulation appointing a judge pro tempore for the trial of the cause, and the person appointed shall take and subscribe an oath to faithfully try and determine the issues joined between the party or parties[,] . . . the person appointed shall be

vested with the same power and authority and shall be charged with the same duties as to the cause in and as to which he is appointed as if he were the regularly elected and qualified judge of the district court . . . .

**2.** The section has since been amended. 1983 Utah Laws ch. 76, § 6.

generally." *In re Pub. Indus. Corp.*, 19 Del.Ch. 398, 409, *sub nom. In re Chilson*, 168 Atl. 82, 85 (1933) (emphasis added). Other courts have expanded the kinds of interests that will lawfully support an irrevocable proxy, such as when a proxy is given as security to creditors of the corporation. *See Mobile & Ohio R.R. Co. v. Nicholas*, 98 Ala. 92, 12 So. 723 (1893).

■ As indicated by Chief Justice Hall's concurring and dissenting opinion, a majority of the Court has decided that Baggs' interest was sufficient to support the irrevocability of the proxies but that they are invalid for other reasons. However, in the author's view, whether Baggs' interest was sufficient or not need not be addressed. Rather, I would place the decision on the ground that Utah law places a limitation on the time a proxy may remain in effect when the parties fail to state a time for termination of the proxies to avoid the evils that arise from permanent separation of stock ownership rights from stock voting rights. *See* Note, *The Irrevocable Proxy and Voting Control of Small Business Corporations* 98 U.Pa.L.Rev. 401, 410–11 (1950); Comment, *Irrevocable Proxies* 43 Texas L.Rev. 733–35 (1965).

■ On its face, § 16–10–31 invalidated the proxies. That section states in part: "No proxy shall be valid after eleven months from the date of execution, unless otherwise provided in the proxy." The proxies did not state any time at which they would terminate; on their faces they were indefinite in length. Since proxies made irrevocable for an indefinite period could seriously and permanently alter the nature of corporate governance, the Utah statute establishes an eleven month statutory period of validity beyond which proxies having no fixed or determinable term are terminated by operation of law, even though they may be coupled with an interest. *Cf. Schultz v. Schultz*, Mo., 637 S.W.2d 1 (1982) (en banc); *Stein v. Capital Outdoor Advertising Inc.*, 273 N.C. 77, 159 S.E.2d 351 (1968); *Muth v. Maxton*, 68 Ohio Abst. 164, 119 N.E.2d 162 (1954).

### III.

On Bryan's separate appeal, he contends that the trial court's ruling of slander is not supported by the evidence and that, in any event, Bryan proved the truth of the statements.

The trial judge found that Bryan made the following statements about Baggs:

This is the way he [Baggs] treats you—he steals behind your back.

We've [Auto West] had problems [with] . . . a possible embezzlement.

That's $45,000 to $50,000 he's [Baggs] stolen from me.

Also, Baggs' wife testified that "[p]eople told me Chuck [Charles Bryan] said Dick [Richard Baggs] stole $50,000 from the dealership."

■ A statement charging another with criminal conduct is slanderous or libelous per se. *Allred v. Cook*, Utah, 590 P.2d 318 (1979); *Prince v. Peterson*, Utah, 538 P.2d 1325 (1975); *Western States Title Insurance Co. v. Warnock*, 18 Utah 2d 70, 415 P.2d 316, 318 (1966); *Nichols v. Daily Reporter Co.*, 30 Utah 74, 83 P. 573, 574 (1905). When words are defamatory per se, no showing of special damages is required because damages are implied. *Allred v. Cook, supra; Prince v. Peterson, supra, Nichols v. Daily Reporter Co., supra.*

Utah Code Annotated, 1953, § 76–6–404 states the elements of theft:

A person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof.

■ Concededly, truth is an absolute defense in a slander action. *Direct Import Buyer's Ass'n v. K.S.L., Inc.*, Utah, 572 P.2d 692 (1977); *Ogden Bus Lines v. K.S.L., Inc.*, Utah, 551 P.2d 222 (1976); *Crellin v. Thomas*, 122 Utah 122, 247 P.2d 264 (1952). *Cf.* Utah Const. art. I, § 15 (truth a defense in libel actions). To establish the defense of truth, "it is not necessary to prove the literal truth of the precise statement made. Insignificant inaccuracies of expression are immaterial, providing

that the defamatory charge is true in substance." *Crellin v. Thomas, supra,* 122 Utah at 127, 247 P.2d at 266, *citing Restatement of Torts,* § 582, comment (e) (1938); 53 C.J.S. *Libel and Slander* § 137 (1948).

■ If a crime is imputed to the plaintiff, the defense of truth requires that the defendant "must fasten on plaintiff all the elements of the crime, both in act and in intent." 53 C.J.S. *Libel and Slander* § 137 at 226 (1948) (footnotes omitted). *Accord Barlow v. International Harvester Co.,* 95 Idaho 881, 891, 522 P.2d 1102, 1112 (1974); *Boehm v. Western Leather Clothing Co.,* Mo.App., 161 S.W.2d 710, 719 (1942); *Schubert v. American Press,* 323 Mo. 299, 19 S.W.2d 472 (1929); *Schattler v. Daily Herald Co.,* 162 Mich. 115, 127 N.W. 42, 46 (1910).

■ In slander cases based on an accusation of a crime and a defense of truth, the majority view is that the defendant who relies on that defense must prove the crime by a preponderance of the evidence. 1 F. Harper & F. Jones, *The Law of Torts* § 5.20 at 417 (1956). *See also* W. Prosser, *The Law of Torts* § 116 at 798 (1971). A minority of courts requires proof beyond a reasonable doubt. 53 C.J.S. *Libel and Slander* § 219(c) at 331 (1948). We adopt the general rule that where a crime is imputed to a plaintiff and the defendant pleads truth as a defense, he need not prove the truth of the assertion "beyond a reasonable doubt, and a preponderance of evidence is sufficient to bar recovery." *Id. Accord Savannah News-Press, Inc. v. Harley,* 100 Ga.App. 387, 111 S.E.2d 259 (1959); *Buckeye Cotton Oil Co. v. Sloan,* 272 F. 615 (6th Cir.1921). The trial judge ruled that under both standards Bryan failed to sustain his burden of showing criminal intent.

■ The record contains some evidence to support a finding that there was an implied agreement that Auto West was to pay for improvements and work done by employees on homes of the partners of Auto West. Further, there was some evidence that Baggs borrowed the money taken from the corporation and intended to return it and that Baggs wrote off bad debts but not for the purpose of benefiting himself. The issue of intent was a factual issue for the trier of fact, *Barlow v. International Harvester Co.,* 95 Idaho 881, 522 P.2d 1102 (1974); *Schubert v. American Press, supra,* and we will not disturb the trial court's finding because there was evidence to support it.

Auto West also contends that the judgment in its favor is insufficient. The trial judge's decision is supported by the evidence, and we will not reverse because of a conflict in the evidence. Furthermore, the judgment stated that it was not res judicata as to certain liabilities Baggs may still have to Auto West.[3] Although we do not address the issue whether a trial judge can prevent a judgment he renders from being res judicata, it appears that Auto West may still have an action against Baggs which the trial judge did permit the parties to adjudicate.

Affirmed, except as to the revocability of proxies. As to that, the case is remanded for a judgment declaring the proxies invalid. No costs.

OAKS, J., concurs.

HALL, Chief Justice (concurring and dissenting):

I join the opinion of the Court, except the portion thereof that concludes that the proxies were terminated by operation of law.

The language of U.C.A., 1953, § 16–10–31, which limits the life of proxies, is plain and unequivocal. It simply provides:

No proxy shall be valid after eleven months from the date of its execution, unless otherwise provided in the proxy.

(Emphasis added.) Therefore, imposition of the statutory proxy-life of eleven months is conditioned upon the absence of

---

3. These resulted from an alleged overdraft at First National Bank of Chicago plus possibly two other checks drawn on the accounts of Auto West in the amount of $25,000 each.

a contrary agreement between the parties to the proxy.

In the instant case, the proxies did "otherwise provide" since they contained express language that declared them to be irrevocable. The irrevocable nature of the proxies effectively neutralized the termination language of the statute, and therefore they remained valid until revoked.

Generally, a proxy is revocable at the pleasure of the stockholder even though by its terms it is declared to be irrevocable.[1] However, a proxy, coupled with an interest, constitutes an exception to the general rule, and such a proxy is irrevocable whether or not the instrument so provides.[2] Again, however, there is an exception to that exception. Although a proxy is given for a valuable consideration, it may be revoked where it is used for a fraudulent purpose.[3]

In this case, the trial court aptly observed that the proxies were coupled with an interest, but it erred in not declaring them to have been lawfully revoked. The stockholders had every right to revoke the proxies by reason of the breaches of faith on the part of Baggs and in light of his unauthorized activities that were wholly inconsistent with the purpose of the proxies and contrary to the best interests of the corporation and the stockholders.

On remand, I would also direct the entry of a judgment declaring the proxies invalid, but would do so on the basis of the lawfulness of the revocation thereof by the stockholders.

HOWE and DURHAM, JJ., concur in the concurring and dissenting opinion of HALL, C.J.

---

**1.** 19 Am.Jur.2d Corporations § 675.

**2.** *Id.* at § 676.

**3.** 18 C.J.S. Corporations § 550g.