MARVIN K. BLOUNT, SR., FLORENCE TAFT BLOUNT, NELSON
BLOUNT CRISP, MARVIN K. BLOUNT, JR. AND WILLIAM G.
BLOUNT v. E. H. TAFT, JR., HELEN F. TAFT, E. H. TAFT III,
THOMAS F. TAFT, RUTH J. TAFT, THOMAS F. TAFT, TRUSTEE
FOR MELANIE ANN TAFT, THOMAS F. TAFT, TRUSTEE FOR
EDMUND HOOVER TAFT IV, AND FORD McGOWAN

No. 753SC1014

(Filed 16 June 1976)

1. Corporations § 4— shareholders' agreement — definition

A shareholders' agreement is a contract between shareholders
which may apply broadly to the rights of the shareholders in conduct-
ing the business of the corporation, so long as their purposes are legal
and not contrary to public policy, and, under G.S. 55-73(b), the agree-
ment is not invalid, though in violation of other statutes, solely on the
grounds that it attempts to treat the corporation as if a partnership;
moreover, a shareholders' agreement may not be altered or terminated
except as provided by the agreement, or by all the parties, or by
operation of law.

2. Corporations § 4— by-laws — shareholders' agreement — distinction

By providing for a shareholders' agreement to be incorporated
into the by-laws of the corporation, G.S. 55-73(b) recognizes a distinc-
tion between the two and also implies that a shareholders' agreement
exist before it is embodied in the by-laws.

3. Corporations § 4— stockholders' agreement — requirements

To meet the requirements of G.S. 55-73(b) for establishing a
valid shareholders' agreement in a close corporation, there must be
an agreement in writing of all shareholders; but the writing may
consist of a written provision in the charter or by-laws of the cor-
poration which may be based on an oral agreement which has been
embodied therein.

4. Corporations § 4— amendment of by-laws — no stockholders' agree-
ment

The trial court erred in concluding that Article III, Section 7, of
the by-laws of a close corporation adopted on 20 August 1971 was a
shareholders' agreement pursuant to G.S. 55-73(b) and not a by-law
which could be amended, as could other by-laws, by the corporate
directors, since here was no evidence that any shareholders expressed
to any other shareholders at the 20 August 1971 meeting, or at any
other time, any desire or intention that the so-called amendment be
embodied in the by-laws as a shareholders' agreement.

5. Appeal and Error § 7— audit of corporation — payment not charged
to defendants — defendants not aggrieved party

Defendants were not aggrieved by the trial court's order requir-
ing a certified audit of the corporation in which they were share-
holders, since neither defendants nor the corporation was charged
with payment for the audit.

APPEAL by defendants from *James, Judge.* Judgment entered 15 July 1975, Superior Court, PITT County. Heard in the Court of Appeals 5 April 1976.

This is an action between shareholders of Eastern Lumber and Supply Company, a corporation. The plaintiffs, consisting of Marvin K. Blount and members of his family, own 41% of the corporate stock; the defendants, consisting of E. H. Taft, Jr., and members of his family own 41%; and defendant Ford McGowen, who was the manager of the corporation, owned the remaining 18% of the stock.

A special meeting of directors and shareholders was called for 20 August 1971, and all were present. The meeting was recorded by a reporter and the transcript was received in evidence as plaintiffs' exhibit. The transcript reveals that the purpose of the called meeting was to apply for a bank loan of $250,000 to be secured by a deed of trust on the corporate property. In the course of the meeting it was agreed that new by-laws would be presented for adoption and that directors and officers would be elected. The proposed by-laws, prepared before the meeting, were read in full and many were discussed, some altered, and finally adopted unanimously. The adopted by-laws relevant to this action are as follows:

"ARTICLE III. BOARD OF DIRECTORS

\*   \*   \*   \*

SECTION 7. Executive Committee. The Board of Directors may, by the vote of a majority of the entire board, designate three or more directors to constitute and serve as an Executive Committee, which committee to the extent provided in such resolution, shall have and may exercise all of the authority of the Board of Directors in the management of the corporation. Such committee shall consist of one member from the family of M. K. Blount, Sr., one member from the family of E. H. Taft, Jr., and one member from the family of Ford McGowan. Minutes of all such meetings shall be kept and a copy mailed to each member of the Board of Directors and action of the committee shall be submitted to the Board of Directors at its next meeting for ratification.

The Executive Committee shall have the exclusive authority to employ all persons who shall work for the cor-

poration and that the employment of each individual shall be only after the unanimous consent of the committee and after interview.

\* \* \* \*

ARTICLE VIII. GENERAL PROVISIONS

\* \* \* \*

SECTION 4. Amendments. Except as otherwise herein provided, these bylaws may be amended or repealed and new bylaws may be adopted by the affirmative vote of a majority of the directors then holding office at any regular or special meeting of the Board of Directors."

As provided by Article III, Section 7, the Executive Committee, consisting of E. H. Taft, Jr., President, and Ford McGowan, Manager, and Nelson Blount Crisp, Secretary, was appointed. The Executive Committee met regularly thereafter and served pursuant to the by-laws until 20 June 1974. On that date a meeting of the Board of Directors was held on call of President Taft after due notice to all directors. Marvin K. Blount was absent because of illness. At this meeting a majority of the directors, but none of the plaintiffs, voted to amend the by-laws, including that portion of Article III, Section 7, which required the unanimous consent of the Executive Committee before anyone could be employed by the corporation.

Plaintiffs allege that Article III, Section 7, was a shareholders' agreement, incorporated in the by-laws, which the Directors had no authority to amend under Article VIII, Section 4, of the By-Laws, and that defendants have employed persons to work for the corporation without the consent of the representative of the plaintiffs and have otherwise breached the shareholders' agreement.

Plaintiffs pray for enforcement of the shareholders' agreement, incorporated in the By-Laws as Article III, Section 7, in the meeting of 20 August 1971, and that the purported by-laws which defendants attempted to adopt on 20 June 1974 be declared null and void.

At trial, with Judge James sitting as judge and jury, the evidence offered consisted primarily of the testimony of some of the parties-plaintiff and parties-defendant and numerous exhibits. Other facts are stated in the opinion.

From judgment for the plaintiffs, defendants appeal.

*Haywood, Denny and Miller by Egbert L. Haywood and John C. Martin for plaintiff appellees.*

*Manning, Fulton & Skinner by Howard E. Manning and Dan J. McLamb for defendant appellants.*

CLARK, Judge.

This appeal presents one issue: Did the trial court err in concluding that Article III, Section 7, of the by-laws adopted on 20 August 1971, was a shareholders' agreement pursuant to G.S. 55-73 (b) and not a by-law which could be amended, as could other by-laws, by the corporate directors?

The shareholders' agreement is recognized and approved by the North Carolina Business Corporation Act of 1955, G.S. 55-73 (b) providing as follows:

> "(b) Except in cases where the shares of the corporation are at the time or subsequently become generally traded in the markets maintained by securities dealers or brokers, no written agreement to which all of the shareholders have actually assented, whether embodied in the charter or bylaws or in any side agreement in writing and signed by all the parties thereto, and which relates to any phase of the affairs of the corporation, whether to the management of its business or division of its profits or otherwise, shall be invalid as between the parties thereto, on the ground that it is an attempt by the parties thereto to treat the corporation as if it were a partnership or to arrange their relationships in a manner that would be appropriate only between partners. Notwithstanding any other provision of this section or of this Chapter, the provisions of G.S. 55-59 (a) shall not apply to such an agreement. A transferee of shares covered by such agreement who acquires them with knowledge thereof is bound by its provisions."

This statute enables the shareholders of a close corporation by agreement in writing assented to by all to provide for the management and operation of the corporation in a manner similar to a partnership. The statute is phrased in the negative, declaring that such agreement is not invalid as between the parties on grounds that it attempts to treat the corporation as if

it were a partnership. It provides for flexibility in judicial treatment; a court may pronounce the shareholders' agreement invalid for other reasons.

With the Business Corporation Act of 1955, North Carolina was recognized as the first state to draft legislation effectively dealing with the unique qualities of close corporations. For discussion of the Act relating to close corporations and shareholders' agreements, see Latty, "Close Corporations and the New North Carolina Business Corporation Act," 34 N.C.L.R. 432 (1956); 1 O'Neal, Close Corporations, §§ 1.14(a) and 5.16 (1971); 6 Cavitch, Business Organizations, §§ 114.01, et seq., (1976). The States of Delaware, Florida, Maryland, Pennsylvania, and South Carolina have enacted statutes identical or similar to G.S. 55-73(b).

We find no cases in North Carolina, or in the other five states which have enacted an identical or a similar statute, that deal directly with G.S. 55-73(b). In *Wilson v. McClenny*, 262 N.C. 121, 136 S.E. 2d 569 (1964), and *Stein v. Outdoor Advertising*, 273 N.C. 77, 159 S.E. 2d 351 (1968), our Supreme Court ruled on matters involving companion provisions of G.S. 55-73(a) and (c).

[1] A shareholders' agreement is a contract between shareholders which may apply broadly to the rights of the shareholders in conducting the business of the corporation, so long as their purposes are legal and not contrary to public policy. Under G.S. 55-73(b) the agreement is not invalid, though in violation of other statutes, solely on the grounds that it attempts to treat the corporation as if a partnership. A shareholders' agreement may not be altered or terminated except as provided by the agreement, or by all the parties, or by operation of law. See 3 Oieck, Modern Corporation Law, §§ 1384-1400 (1958).

[2] By providing for a shareholders' agreement to be incorporated into the by-laws of the corporation, G.S. 55-73(b) recognizes a distinction between the two and also implies that a shareholders' agreement exist before it is embodied in the by-laws. Those parts of the Business Corporation Act dealing with by-laws and their amendment, primarily G.S. 55-16, G.S. 55-66, and G.S. 55-28(d), provide for the amendment of by-laws by a majority of the board of directors then holding office, though initially adopted by the shareholders at its organization meet-

ing. There is no provision in the Business Corporation Act that the by-laws of a corporation, or any one or more of the by-laws, become a shareholders' agreement solely because of unanimous adoption thereof by the shareholders. By inference these statutes negate this result.

[3]  We find that to meet the requirements of G.S. 55-73(b) for establishing a valid shareholders' agreement in a close corporation, there must be an agreement in writing of all shareholders; but the writing may consist of a written provision in the charter or by-laws of the corporation which may be based on an oral agreement which has been embodied therein. We are aware that G.S. 55-73(b) was intended to supply a legal framework within which partner-like arrangements having a reasonable business purpose could be worked out with substantial assurance of legal validity. While recognizing this intent and the need for judicial flexibility in determining the validity of such agreements, we consider it appropriate to point out that those who have the burden of proving a valid shareholders' agreement could ease this burden by offering an agreement in writing signed by all shareholders, or if embodied in the charter or by-laws explicit designation therein of a shareholders' agreement and provision for alteration of the agreement if different from the alteration or amendment provisions applicable to the charter or by-law provisions which are not within the agreement.

[4]  In applying G.S. 55-73(b) to the evidence and the issue presented by this appeal, we rely primarily on the transcript (plaintiffs' Exhibit 3) of the meeting of the shareholders held on 20 August 1971, when the new by-laws of the corporation were adopted by unanimous vote. The transcript is voluminous, and we do not consider verbatim reproduction appropriate in this opinion. It appears from this transcript that the meeting was called primarily to approve a loan in the sum of $250,000 from a bank to the corporation; that since the old by-laws could not be found, new by-laws were prepared prior to meeting in contemplation of a need for them in obtaining the loan and to guide the corporation in its expansion program; that the proposed by-laws were read and suggested changes were made in various sections as needed. When Article III, Section 7, was read, Nelson B. Crisp, daughter of M. K. Blount, Sr., suggested that the Executive Committee consist of one member from each of the Blount, Taft and McGowan families. This was followed

by a discussion relating to the power of the Executive Committee, which resulted in apparent agreement on the requirement that the committee report its minutes to the directors and submit actions for ratification to the directors at the next meeting of the board. Thereupon, the reading of the by-laws was resumed. When the reading was completed, Nelson B. Crisp seconded the motion of E. H. Taft, Jr., to adopt the by-laws, but then at the suggestion of M. K. Blount, Sr., offered an amendment to Article III, Section 7, relating to approval of full-time employees by the Executive Committee. After discussion which resulted in apparent approval, the last sentence was added to said Section 7 requiring that the Executive Committee unanimously approve the employment of each individual after interview. The by-laws were then adopted by unanimous vote of the shareholders.

At trial Nelson B. Crisp, W. G. Blount, and Marvin K. Blount, Jr., testified for plaintiffs. None recalled any statement made by them or anyone else present at the shareholders' meeting of 20 August 1971 that any section of the by-laws was a shareholders' agreement. But Marvin K. Blount, Jr., testified that, though he made no statement at the meeting indicating a shareholders' agreement, it was his "understanding that the only provision that cannot be changed is Section 7 of Article III which gives to the Executive Committee the exclusive authority to hire and set salaries of employees of the Company." However, this interpretation was not expressed by Mr. Blount to other shareholders at the 20 August 1971 meeting or at any subsequent time before the institution of this action.

The minute book of the corporation, a plaintiffs' exhibit, reveals that the Blount family had disapproved of the employment of the son of E. H. Taft, Jr., in the late Sixties and had objected to the proposed employment of the son of Ford McGowan. The issue of nepotism reached an impasse in 1969. Neither son was employed by the corporation at the time of the meeting of 20 August 1971. Though it does not appear that the nepotism issue was mentioned by the shareholders at this meeting in discussing Article III, Section 7, it is probable that this issue motivated the Blount family in proposing as an amendment the last sentence of this section, which would give them some control over employment practices. However, assuming that they attach considerable importance to this part of said Section 7, it does not appear that they expressed to other share-

holders at the meeting, or at any other time, any desire or intention that the so-called amendment be embodied in the by-laws as a shareholders' agreement.

We find that there is no competent evidence to support the conclusions of the trial court that Article III, Section 7, of the by-laws adopted on 20 August 1971 was a valid shareholders' agreement, which could not be amended as provided by Article VIII, Section 4, of said by-laws or the conclusion that said Section 7 was not validly amended, as were other by-laws, at the meeting of the board of directors on 20 June 1974. The trial court erred in denying the defendants' motion to dismiss.

[5] There remains for disposition defendants' exception and appeal from the trial court's order of 2 July 1975, granting plaintiffs' oral motion, made immediately after trial, for a certified audit of the corporation. Since the order did not provide for payment of the audit by defendants or by the corporation (which was not a party to this action), the defendants are not aggrieved. The appeal from this order is dismissed.

The judgment appealed from is vacated. This cause is remanded for hearing and ruling on the matter relating to the certified audit of the corporation and payment therefor, and for entry of judgment dismissing the action.

Vacated and remanded.

Judges BRITT and PARKER concur.