497 P.2d 1378

**Fred DEMMAN, Jr., Plaintiff and Appellant,**

v.

**STAR BROADCASTING CO. and Larry Wilcox, Defendants and Respondents.**

**No. 12729.**

Supreme Court of Utah.

June 5, 1972.

Tuckett, J., concurred and filed opinion.

Ellett, J., dissented and filed opinion in which Crockett, J., joined.

Leedy & Bottum, Richard J. Leedy, Salt Lake City, for plaintiff and appellant.

Bryce E. Roe, Shirley P. Jones, Jr., Salt Lake City, for defendants and respondents.

HENRIOD, Justice:

Appeal from a summary judgment dismissing a defamation action. Affirmed with costs to defendants.

Plaintiff, at the time of the alleged defamation, was a candidate for election as a Salt Lake County Commissioner.

Defendant KSXX is a local radio station featuring a two-way gabfest where anonymous persons call what appears to be a suspiciously deliberate controversial communicaster, whose forte seems designed to increase the crescendo of debate to a lively repartee sometimes bordering on mutually belligerent rhetoric. The station's plug is sung by a somewhat twangy, nasal, cowboy contralto, fortunately also anonymous, who either peddles the station's advertising advantages or represents a mortician's come-on by sweet, syrupy lyrics set to a catchy counterpoint that pierces the airwaves with "Kaysicks Radio, is the smilin' way to go [obbligato], on KSXX, in Salt Lake City."

On the day of the colloquy defendants allegedly "damaged plaintiff's reputation and caused him embarrassment, humiliation, emotional distress and mental suffering," to the tune of a half-million dollars, plus a bonus of $100,000 for defendants' "intentional and *malicious*" actions on their "reckless disregard of the truth." This kind of damage means punitive or slap-on-wrist damages.

The alleged slanderous dialogue took place at 2:30 p. m. on election day—about

five and one-half hours before the polls closed, when an unknown male phono-maniac called in and began berating plaintiff's qualifications for office, vaguely attributing such imperfection to some sort of deficiency in business acumen. At this juncture he asked the defendant communicaster, Wilcox, "What kind of outfit does that man run down there?" In responding, Mr. Wilcox gave a soul-searching answer in the form of a question, which we think suggested an appropriate defense to a slander or libel suit against a news media, and in this case its employee. Mr. Wilcox's answer: "I don't know. Is he a business man?" The caller, by some sort of innuendo, without much specificity as to time or place, cast in Demman's direction what we concede were rather unfair opprobriums in describing plaintiff's character. Another anonymous but female person almost immediately called and in a heart-warming manner defended the plaintiff in a most praiseworthy fashion. Plaintiff received another assist when a vice-president of KSXX blew a bubbly ad lib into the air by way of apologia and praise for the high standards of his station, that sounded quite sincere and quite, quite persuasive, to a Federal Communications Commissioner had he been listening to the tense, critical, political contest for seats on the Salt Lake County Commission.

Denman's chief urgences for establishing remorse allegedly were Wilcox's infectious laugh when the caller, by innuendo, suggested Demman's low-key credentials, his failure in pressing the panic button to cut off the air and still forever the obnoxious voice funneling in and out of the station, allegedly to the delight, and probative of the malice of Wilcox, who didn't even know Demman. The latter, in his deposition, emphatically said Wilcox was malicious,—not that he simply thought he was. Plaintiff's counsel assigns such apodiction as gospel that destroyed any possibility for summary judgment. We disagree, as did the trial court.

All pertinent persons recited their vows and depositions. The judgment stated that the parties stipulated the court could decide the case on the merits, to which recitation no one objected. It is therefore with some degree of surprise that plaintiff suggested on appeal that he was entitled to a jury trial.

Only other point is whether the dialogue was mouthed with malice,—a condition precedent to compensability.[1] There is no evidence whatever to reflect any malice on the part of any of the station's officials. The believable evidence would justify the conclusion that there was none on the part of Wilcox. On the contrary, the evidence displays a most quixotic empathy for the

1. New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, 95 A.L.R.2d 1412 (1964).

candidate on the part of the station, with a bit of understandable protective braggadocio indulged by the station's vice-president.

The station also is protected under Title 45–2–5, Utah Code Annotated 1953, against any defamatory statement made for or on behalf of a candidate for public office, as defined in the legislation, and hence, under the facts here, is immune from liability. As to Wilcox, however unthinking he may have been in failing to chop the anonymous one off the air, and no matter to what degree his risibility may have roiled the plaintiff, nonetheless, the record points up an absence of malice on his part as that term ordinarily connotes.

There is a distinguished and legitimate segment contending that we in public office or who seek it, toss our respective lives and reputations on the auction block of political slavery, to be weighed, pinched, praised or sent packing, to a greater extent than others; that the superficial criticisms of aspirants for office who say that but for their many friends they would perish the thought of running, neither can dim their role in the public eye, nor the spotlight of public canvass, and that contrariwise, they must hazard the calculated risk of becoming an unblushing member of a naked cult,—perhaps resentfully, to expose themselves so all may see their all. To weather such nudity, they say, one needs a heavy hide, and an asbestos antimacasser as his raiment. If lawsuits were permissible in every instance where one candidate suggests that his opponent is a fugitive from the truth, or enjoys a questionable role in the animal kingdom, there would evolve a benevolent monarchy come November, resulting from dearth of candidates,—with no enlightening press releases to tell the serfs about the event.

Malice absent, plaintiff is the victim of the election, and damnum absque injuria,—or its beneficiary,—depending on one's point of view.

CALLISTER, C. J., concurs.

TUCKETT, Justice (concurring).

I concur. The plaintiff's cause of action is controlled by the provisions of Section 45–2–5, U.C.A.1953, which are set forth in the dissenting opinion of Mr. Justice Ellett. Before the plaintiff could prevail he had the burden of showing malice on the part of the defendant in broadcasting or permitting the broadcasting of the defamatory material as claimed by him. Ordinarily, the plaintiff would be entitled to have the issue of malice as well as the other fact questions determined by a jury. However, the record before us indicates that the plaintiff agreed in the district court to have the issues determined by the court from the pleadings, depositions and affidavits on file. The plaintiff having agreed to that procedure he cannot claim on appeal that his right to a jury trial was denied.

ELLETT, Justice (dissenting).

I dissent.

The defendants broadcast over their radio station the following conversation between an unknown caller and defendant Wilcox:

CALLER: . . . now, you cannot name me, you cannot tell me, nor any of these Democratic callers, where that man is qualified to handle 29 million dollars of the taxpayers' money, that's comin' up in here. He has not had any qualifications, his schooling is not for that, uh uh, he's in debt with his brothers in here, through the state, because they don't pay their bills. Now, now let's look a little bit further. What kind of an outfit does that man run down there?

WILCOX: I don't know. Is he a business man?

CALLER: Business man. . . . Demman, right across the street from the Utah Power & Light Company.

WILCOX: Oh.

CALLER: If, if you want to go to the Go-Go Girls, that's it. If you want to go buy liquor by the drink, that's it. If you want to, ha, I won't say it.

WILCOX: Ha, ha.

CALLER: If you want to get to other places on here, it's, it's available for ya, uuh.

WILCOX: Well, then, he's qualified as a, well, I won't say.

CALLER: He's qualified.

WILCOX: Ha, ha, ha.

CALLER: He's qualified for the, uh right in with the underworld, 'n I think uh if he can get in in here, he wants to make these laws prosperous for his business out here.

The plaintiff at the time not only was a candidate for office but was also a business man. He claims that directly and by innuendo he was accused of engaging in criminal activity which amounted to a felony. Such statements, if false, are actionable. The applicable law is found in 50 Am.Jur.2d, Libel & Slander § 135, as follows:

. . . [A]lthough a candidate for office puts his qualifications in issue, it has been well said that while he may be canvassed, he cannot be calumniated. Thus, it is defamatory, and in proper circumstances actionable, to charge a candidate for office with having committed a crime, or to make against him other accusations involving moral turpitude; to charge that he is not eligible for office,

. . . ; or to charge him with having championed measures opposed to the moral interests of the community, where such a charge is made as a statement of fact, and not as a mere opinion or inference drawn from any specified acts.

. . .

Plaintiff further alleged and defendants admit that there is a seven-second delay after words are spoken before they are broadcast and Mr. Wilcox could have pre-

vented the broadcast of any statement within seven seconds after it was made.

Almost immediately after the broadcast an official of the corporate defendant made a public apology, saying:

> Yes. I certainly want to talk. Uh . . All communicasters on this station have been given instructions that individual candidates in this election are not to be libeled. And as a matter of fact, communicasters have been told that individuals are not to be allowed to campaign for or against candidates in this election. Mr. Demman has been libeled on this station, it sound like, and uh on behalf of KS double X, I'm offering a public apology to Mr. Fred Demman. Uh . . accusations have been allowed to be made against him, Larry has no idea whether or not they are true, and he had no right to allow them on the air, and there will be no airing of further accusations such as this and uh . . . we certainly do offer a very public apology to Mr. Fred Demman.

An apology made after a defamation is no defense to the cause of action. It might affect an award of damages but is not a defense.

The defendants rely on the provisions of Section 45–2–5, U.C.A.1953, Replacement Vol. 5A, which reads:

> No person, firm, or corporation owning or operating a radio or television broadcasting station or network of stations shall be liable under the laws of libel, slander or defamation on account of having made its broadcasting facilities or network available to any person, whether a candidate for public office or any other person, or on account of having originated or broadcast a program for discussion of controversial or any other subjects, in the absence of proof of actual malice on the part of such owner or operator. In no event, however, shall any such owner or operator be held liable for any damages for any defamatory statement uttered over the facilities of such station or network by or on behalf of any candidate for public office.

It is to be noted that the conversation was not uttered by or on behalf of any candidate for public office and that plaintiff alleged actual malice on the part of defendant Wilcox.

The defendants further rely on Section 45–2–7, U.C.A.1953, Replacement Vol. 5A, which contains the following language:

> . . . In no event, however, shall any such person, firm, or corporation be liable for any damages for any defamatory statement or act published or uttered in or as a part of a visual or sound broadcast unless it shall be alleged and proved by the complaining party that such person, firm, or corporation has failed to exercise due care to prevent the publication or utterance of such statement or act in such broadcast. . . .

**56**

The plaintiff alleged that Wilcox failed to exercise due care in preventing the publication.

The defendants made a motion for summary judgment and filed an affidavit wherein they claimed that there was no evidence of malice or failure to exercise due care to prevent the broadcast of the utterances complained of.

In considering a motion for summary judgment the court looks only to see if there are no genuine issues of fact in dispute. It does not weigh the evidence or draw inferences therefrom.

On October 28, 1971, the court granted the defendants' motion for summary judgment. On November 10 following, the court set aside the summary judgment signed on October 28, 1971, and in his written order stated that the parties had stipulated that all depositions theretofore taken should be published and the matter be considered on its merits. No such stipulation appears in the record. The statement in the judge's second summary judgment does not say the parties stipulated that the *case* could be considered on the merits. It says that the *matter* could be so considered. The *matter* before the court was a motion for summary judgment. The first ruling of the court was made without the benefit of depositions taken. It thus appears to me that the intention of the parties and of the judge was to have all of the available evidence before the court, so he could more correctly determine the *matter* which was before him, to wit: whether there was a material issue of fact to be determined. A demand for jury trial was made and the jury fee paid. In fact, the record shows that the case was set for trial for January 20, 1972. The court did not determine the case on the merits. It made no findings of fact or conclusions of law. See Rule 52, U.R.C.P. It merely ordered:

1. That the Summary Judgment entered herein on October 28, 1971, be and it hereby is vacated.

2. That defendants' Motion for Summary Judgment be and it hereby is granted and that the action be and it hereby is dismissed with prejudice and on the merits.

Both parties state in their briefs that the appeal is from the granting of a summary judgment, and neither party claims that the case was tried on the merits.

I think there are genuine and material issues of fact to be resolved upon evidence given, and for that reason I would reverse the summary judgment rendered and remand the case for trial. I think the plaintiff should have his costs on this appeal.

CROCKETT, J., concurs in the views expressed in the dissenting opinion of Ellett, J.