**DIRECT IMPORT BUYERS ASSOCIATION,**
**Plaintiff and Appellant,**

v.

**KSL, INC., Defendant and Respondent.**
**No. 13966.**

Supreme Court of Utah.
July 21, 1975.

---

2. Sec. 61–2, Utah Industrial Comm. regulations, Sec. 35–1–16(1), Utah Code Annotated 1953, as amended, cited by appellant.

Kenneth M. Hisatake, Salt Lake City, for plaintiff and appellant.

Ray R. Christensen of Christensen, Gardiner, Jensen & Evans, W. Clark Burt of Callister, Greene & Nebeker, Salt Lake City, for defendant and respondent.

ELLETT, Justice:

This is an appeal by plaintiff from a summary judgment in favor of the defendant for no cause of action.

The plaintiff was selling a product called Econo-Jets, which when used in the carburetor of an automobile was claimed to increase gas mileage and reduce pollution. It advertised its products through KSL and claims that its sales were numerous until November 14 and December 31, 1973, at which time Lynn Packer, an announcer for KSL, Inc., made false statements over the air deprecating plaintiff's products, and as a result thereof plaintiff sustained a great loss of sales.

The defendant claims that due to gasoline shortage at the time, the product was a news item and that the information broadcast was of a public interest and was true. It makes a further claim that the statements made over the air were conditionally privileged.

The substance of the statement as made was to the effect that the Econo-Jets sold in stores for $5.95 a pair; that the inventor said they cost twenty cents per pair to manufacture but the price was driven up by royalties, packaging, marketing and profits; and that Econo-Jets advertising says the product can add up to six miles per gallon when installed on a car.

The announcer also stated:

(a) That KSL News had sent a set to Motor Vehicle Research Laboratories in New Hampshire and that Director A. J. White said that the device can slightly increase mileage by leaning the fuel mixture, but the leaner mixture created by the units he's seen could cause burned valves and the hole could admit dust into the engine and that in his opinion the jets do not improve mileage. White said further that the rules of the U. S. Clean Air Act prohibit disturbing a car's existing idle screws.

(b) A spokesman for Econo-Jets said his product was being tested by the New Orleans Police Department and the test was going "very well," but in New Orleans Captain Herman Saacks today said he's noticed no gas mileage improvement with the jets installed in his personal police car.

(c) A local auto executive said he personally thinks such devices are a waste of money.

(d) Doctor Grant Winn of the Utah Air Conservation Committee said the Econo-Jets would be unlawful, if they alter—for the worse—a car's air pollution control equipment.

(e) In 1971 a California government agency tested Econo-Jets and found the units decreased carbon monoxide emission but increased hydrocarbon and nitrogen oxides emissions.

The announcer concluded on one occasion by saying, "Inventor Rock says thirty thousand units in successful operation prove the skeptics wrong. He says he is now developing a new engine that will

yield 60–70 miles per gallon. And to top that, the Utahn says he's close to a cure for cancer and the common cold."

The basis upon which plaintiff claims a right to recover is libel and slander, but it is actually for injurious falsehood. The principle of slander of title, while similar, is not quite the same, for in this case there is no disparagement of plaintiff's title. It is merely a depreciation of the quality of plaintiff's product.

In order for plaintiff here to recover, it must prove falsity of the statements made, malice, and special damages.[1]

Mr. Packer, the announcer, filed an affidavit in which he averred that he, in good faith, attempted to introduce into the broadcast the relevant and reliable facts about the product and that he utilized his best efforts to state the same fairly and evenhandedly.

The plaintiff filed affidavits wherein it was stated that Lynn Packer did not make a reasonable effort to verify the information which he published and that he did not publish all of the material and pertinent information on hand but published only those portions of the information which tended to cast doubt on the product.

 The malice which plaintiff must show in order to overcome a conditional privilege is simply an improper motive such as a desire to do harm or that the defendant did not honestly believe his statements to be true or that the publication was excessive.[2]

The plaintiff also claims that the defendant did not exercise due care to prevent the broadcasting of the false statements as required by Section 45–2–7, U.C.A.1953.

 In view of the fact that the announcer stated, "And to top that, the Utahn says he's close to a cure for cancer and the common cold," it would seem to present a jury question as to whether malice existed. This statement has absolutely no relevance to the efficiency of Econo-Jets and might be considered by the triers of the facts along with other matters in determining whether malice existed. The question of the truth of the statement and the matter of special damages are, of course, for the jury.

We think there are disputed issues of fact in this case which prevent the granting of a summary judgment. Therefore, the judgment is reversed and the case remanded for such further proceedings as may be proper not in conflict with this opinion. Costs are awarded to the appellant.

CROCKETT, MAUGHAN and TUCKETT, JJ., concur.

HENRIOD, Chief Justice (dissenting).

I dissent and believe the lower court should be affirmed.

I have read the two broadcasts upon which this case is bottomed and I see nothing in them that would approach in infamy the critical analysis of a Consumers Guide, or a defamatory departure from an uncompensable effort to educate the public of the pros and cons of an article being placed before an unknowledgeable public, that not only is novel and obviously controversial in the eyes of others than the radio station as evidenced by the very language of the broadcasts and the source materials employed, but one, which, in a serious energy shortage, deserves a high degree of specificity in canvassing its fuel-saving capabilities.

There is nothing I discern in the newscasts that states as a fact precisely what the device can or cannot do, except as is found in the opinions of others,—presumably experts,—none of which substantially seems to have up-or-down-graded it.

As to evidence of malice with the intention seriously and wilfully to damage the

---

1. *Drug Research Corp. v. Curtis Publishing Co. et al.*, 7 N.Y.2d 435, 199 N.Y.S.2d 33, 166 N.E.2d 319 (1960).

2. 50 Am.Jur.2d, Libel and Slander, Sec. 544; 53 C.J.S. Libel and Slander § 277.

distributor of this article, there is no evidence thereof, as I can see, save the possibility of zealous inquiry on the part of the newscaster,—whose malice or naivete better should have been the concern of his employer. It is difficult to see how the news media would hate a carburetor without grease, and more difficult to see how Packer, who apparently could have employed a bit,—but seems not to have been going anywhere in particular, anyway,—except to court, likewise could hate a carburetor.

I wish someone years behind had warned me about Dr. Graves' Easy Elixer,—cure for the misery, cancer and/or the common cold,—and leave Peter Zenger to run around so long as he is not a fugitive from irresponsible or unreasonable enlightenment of the public.