**OGDEN BUS LINES et al., Plaintiffs and Appellants,**

v.

**K S L, INC., Defendant and Respondent.**

**Jerry LaVoy RICE, Plaintiff and Appellant,**

v.

**K S L, INC., Defendant and Respondent.**
**No. 14217.**

Supreme Court of Utah.
June 1, 1976.

Gary L. Gale, of Gale & Havas, Ogden, for appellants.

Ray R. Christensen, of Christensen, Gardiner, Jensen & Evans, Salt Lake City, for respondent.

SHEYA, District Judge:

Plaintiff Ogden Bus Lines is a partnership and plaintiffs Metro Transportation Company, Inc., and Wasatch, Motors, Inc., are Utah corporations. All plaintiff businesses were at all times pertinent to this case wholly owned by John H. Yeaman and his wife, and at said times some or all of them were licensed as intrastate carriers by the Public Service Commission of Utah. Plaintiff Rice was employed as a bus driver by Ogden Bus Lines.

Plaintiff Ogden Bus Lines arranged with the Weber County School District to make available sufficient buses on certain routes to transport students to and from their homes. The school district purchased student tickets which said Bus Lines accepted. This service therefore was not strictly a school bus service. The Bus Lines accepted all customers who paid their fares.

An Ogden Bus Lines bus, being driven by plaintiff Rice, was involved in a serious accident, on or about May 27, 1967, while loaded with school children, many of whom were seriously injured.

On or about June 6, 1967, the defendant published an editorial relating to the accident. The editorial was as follows:

Judgments by hindsight are the easiest kind, of course. Nevertheless, many Utahns must have been shocked when they learned that the driver of the school bus involved in a collision with a dump truck a few days ago has been charged with driving on a revoked license.

This fact must not lead us to make any judgments as to the responsibility for this accident. However, KSL believes the conclusion is warranted that the operator of the vehicle, Ogden City Bus Lines was lax.

The State Board of Education recommends that before a school bus driver is hired his driving record should be closely examined. Many school districts in the state scrupulously follow this policy. This seems no more than prudent. Further, every district should establish a set of standards to be met by the operator of any bus it charters. Indeed, to do less would seem to be a dereliction of the responsibility the district owes the parents of the children placed in its care.

KSL believes it would be well for all school districts in the state to review their policy for the employment of school bus drivers. Obviously, the lives of children must be placed in the care only of those who have demonstrated that they are competent to hold that trust.

Plaintiffs Rice and the several bus companies filed separate actions against defendant for libel and slander by reason of certain statements contained in the editorial. The lower court granted summary judgment against both plaintiffs and in favor of the defendant. Plaintiffs have appealed seeking reversal of the lower court's judgment in said cases and an entry of judgment in favor of each plaintiff, or in the alternative that each case be remanded to the court below for a trial on the merits.

In paragraph 5 of each complaint, the respective plaintiffs make the same allegations, to wit: That the editorial (heretofore set out in full) stated that the driver of the school bus was driving said bus while his license was revoked and that the three businesses (owned by Yeamans and wife) should not have hired a driver whose license had been revoked. It is further alleged in said paragraph that the said editorial was written, produced, and published without the exercise of due care and with malice, which defamed, libeled and slandered the plaintiffs, causing them great damages.

It will be noted that plaintiffs predicate their entire cause of action in both cases on the allegation that defendant's editorial "stated that the plaintiff was driving the school bus while his license was revoked, and that the Ogden Bus Lines, Metro Transportation Co., Inc., and Wasatch Motors, Inc., should not have hired a driver whose license had been revoked."

■ However, it will be observed from a reading of the editorial set forth above verbatim that it stated plaintiff Rice "has been *charged* with driving on a revoked license," and not that he was driving on a revoked license at the time of the school bus accident. The editorial's statement that plaintiff Rice had been *charged* with driving on a revoked license was true. Plaintiff Rice admitted he had been *charged* with driving on a revoked license as stated therein. The following rule is recognized by eminent authority:[1]

The truth of a defamatory statement of fact is a complete defense to an action for defamation.

Although no complaint is made thereof by plaintiffs in their pleadings, the only statement made in the editorial relative to the bus company plaintiff was:

KSL *believes* the conclusion is warranted that the operator of the vehicle, Ogden City Bus Lines, was lax.

This latter statement was a mere opinion. The editorial made no statement of fact concerning the defendant corporations directly or indirectly.

Other than the statements above specifically quoted from it, the remainder of the editorial contains beliefs, opinions and recommendations of defendant as to the policies and procedures which should be followed to make safer the transportation of school children generally.

■ There is no evidence in the record showing or tending to show that any statements of fact made by defendant in the editorial concerning any plaintiff were false. On the contrary, the facts therein stated are shown by the evidence to be true, and therefore are not actionable.

■ A respectable legal authority states the following rule:[2]

It is firmly established that matters of public interest and concern are legitimate subjects of fair comment and criticism, not only in newspapers, and in radio and television broadcasts, but by members of the public generally, and such comments and criticisms are not actionable, however severe in their terms, unless they are made maliciously . . . .

■ It seems clear to this court that problems affecting our schools are matters in which the public has a legitimate interest and would be within the rule set forth above. This court has adopted this rule.[3]

In the Williams case, this court held the defendant newspaper was performing a duty "of a moral or social character of imperfect obligation." Further, this court quoted approvingly from a leading authority as follows:[4]

. . . A fair and bona fide comment on a matter of public interest is an excuse of what would otherwise be a defamatory publication . . .

1. The Restatement of Torts, Sec. 582. See also: 50 Am.Jur.2d 676, 682, Libel and Slander, Sections 173, 179; 53 C.J.S. Libel and Slander § 137, pp. 223–224; *Curtis Publishing Company v. Butts* (1967) 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094; *Williams v. Standard-Examiner Publishing Company*, 83 Utah 31, 27 P.2d 1 (1933); and *Crellin v. Thomas*, 122 Utah 122, 247 P.2d 264 (1952); *Derounian v. Stokes*, Utah, 10 Cir., 168 F.2d 305 (1948); *Jeffers v. Screen Extras Guild, Inc.*, 162 Cal.App.2d 717, 328 P.2d 1030 (1958).

2. 50 Am.Jur.2d 807, 808, Sec. 290. See also 1 Harper and James, The Law of Torts, 456, Sec. 5.28; Prosser on Torts, 4th Ed., 792, 822; 53 C.J.S. Libel and Slander § 131, p. 211; *Spriggs v. Cheyenne Newspapers*, 63 Wyo. 416, 182 P.2d 801.

3. *Spielberg v. A. Kuhn & Brother*, 39 Utah 276, 116 P. 1027; *Williams v. Standard-Examiner Publishing Company*, supra.

4. Newell on Slander and Libel (4th Ed.) beginning on p. 520, Sec. 483.

■ The court also quoted the following from another leading authority as follows:[5]

. . . The right of comment is not restricted to a restatement of the naked facts. As a general rule it may include the right to draw inferences or express opinions from facts established. The soundness of the inferences or opinions is immaterial whether they are right or wrong, provided they are made in good faith and based upon the truth . . .

■ No public official or candidate is involved herein as in the *Williams* (supra) and *Demman* cases.[6] Hence actual malice need not be shown.

■ In a recent case,[7] this court said:

The malice which plaintiff must show in order to overcome a conditional privilege is simply an improper motive such as a desire to do harm or that the defendant did not honestly believe his statements to be true or that the publication was excessive.

We do not find any of the above elements of malice present in this case from the evidence before the court. In order to prevail, the plaintiff had the burden of showing malice on defendant's part in the broadcast of the alleged defamatory statements.

Since we do not find that the defendant made any false statements in said editorial, it is deemed unnecessary to consider plaintiffs' allegation that defendant did not exercise due care to prevent the broadcast of the editorial. This would be immaterial in the absence of any false assertions.

In the *Direct Import* case, (footnote 7) plaintiff filed affidavits indicating that a reasonable effort was not made by defendant to verify the information published and published only portions of the information which tended to cast doubt on the product. The announcer added an irrelevant comment which could be construed as a disbelief in plaintiff's claims for the product. This court accordingly reversed a summary judgment for defendant in that case.

In the cases at bar, which have been pending since 1969, we do not find one deposition or affidavit taken or filed by plaintiffs upon which a claim of malice, implied or in law, or abuse of privilege, can be founded.

There is no evidence of malice on the part of the defendant in the record in broadcasting the editorial above set forth. In the section of our Code which relates specifically to radio and television broadcasting stations,[8] it provides as far as relevant to this case, as follows:

. . . No person, firm, or corporation owning or operating a radio or television broadcasting station . . . shall be liable under the laws of libel, slander or defamation . . . on account of having originated or broadcast a program for discussion of controversial or any other subjects, in the absence of proof of actual malice on the part of such owner or operator. . . .

On the question of malice, this court has stated:[9]

The question of whether a qualifiedly privileged article is written or published with malicious motive or otherwise is generally speaking, a question of fact to be determined by the jury. However, in the absence of proof that such communication was published with actual malice, it is within the power and duty of the courts to say as a matter of law that the motive of the publication was without malice.

---

5. 36 C.J. 1282, sec. 285.

6. *Demman v. Star Broadcasting Co.*, 28 Utah 2d 50, 497 P.2d 1378; U.C.A.1953: 45–2–5; 45–2–10(4). Neither statutory provision says "actual malice," but only "malice" which can be actual or implied.

7. *Direct Import Buyers Ass'n v. KSL, Inc.*, 538 P.2d 1040 (Utah 1975).

8. Section 45–2–5, U.C.A.1953.

9. *Williams v. Standard-Examiner Publishing Company* (supra).

The above rule would apply in the absence of proof that such communication was published with implied malice or malice in law.

In a very recent New York case [10] the court states:

Accordingly, this court concludes that publications which concern matters of public interest—and those involved here unquestionably do—are subject to a qualified privilege and are actionable only upon a showing that they were made "with knowledge that . . . [they were] false or with reckless disregard of whether . . . [they were] false or not." [*New York Times Co. v. Sullivan,* supra, 376 U.S. [254] at p. 280, 84 S.Ct. [710] at p. 726 [11 L.Ed.2d 686].

With respect to the question of whether or not a summary judgment was appropriate, the same New York court said:

This court accordingly concludes that plaintiffs' allegations of actual malice, in their complaint, and in opposition to this motion, are insufficient, and fail to raise triable issues of fact. Under the circumstances, summary judgment dismissing the complaint is the appropriate remedy . . . ..

A recent case from our sister state of Colorado [11] held:

We hold that, when a defamatory statement has been published concerning one who is not a public official or a public figure, but the matter involved is of public or general concern, the publisher of the statement will be liable to the person defamed if, and only if, he knew the statement to be false or made the statement with reckless disregard for whether it was true or not.

Since the defendant's editorial stated that defendant was *charged* with driving while under revocation and this statement is admittedly true, and the editorial said with respect to plaintiff corporations only that defendant believed that they had been lax, which is a mere opinion or belief and not therefore actionable, and by reason of the further fact that the record does not disclose any malice on defendant's part in discussing a matter of public interest, to wit: the safety of the transportation of school children, the judgments of the lower court granting summary judgment in favor of the defendant in both of these cases are hereby affirmed. No costs awarded.

All emphasis supplied.

ELLETT, CROCKETT, TUCKETT and MAUGHAN, JJ., concur.

HENRIOD, C. J., having disqualified himself, did not participate herein.

10. *Commercial Programming Unlimited v. Columbia Broadcasting Systems, Inc.,* 81 Misc. 2d 678, 367 N.Y.S.2d 986.

11. *Walker v. Colorado Springs Sun, Inc.,* Colo., 538 P.2d 450.