DIRECT IMPORT BUYER'S ASSOCIATION, Plaintiff and Appellant,

v.

K. S. L., INC., Defendant and Respondent.

No. 14908.

Supreme Court of Utah.

Nov. 22, 1977.

---

4. 113 Utah 155, 186, 192 P.2d 563, 579 (1948).

5. 5 Utah 2d 152, 156, 298 P.2d 531, 534 (1956).

Kenneth M. Hisatake, Salt Lake City, for plaintiff and appellant.

Ray R. Christensen, W. Clark Burt, Robert S. Campbell, Jr., Salt Lake City, for defendant and respondent.

ELLETT, Chief Justice:

The appellant brought suit against the respondent, a television station, for alleged falsehoods broadcast over the air whereby a product sold by appellant was stated to be less efficient as a gasoline saver than appellant claimed it to be. The product in question was known as an "Econo-jet" and was a carburetor needle with a hole in its center that allowed extra air to be introduced into the carburetor so that a leaner mixture of

gasoline was exploded in the cylinders of the automobile motor.

While the words used cast doubt on the efficacy of the needle, they did not in any manner whatsoever reflect on the character, reputation, or want of skill on the part of appellant. They simply were to the effect that the claim made about the needle was not yet verified.

■ In case of words falsely broadcast relating to the quality of an article that is made, produced, furnished, or sold by a person, no action will lie unless special damages are alleged, and no recovery can be had unless such special damages are proved.[1] Furthermore, the burden is on the plaintiff in such a case to prove that the product is not as represented by the defendant but is in fact as the plaintiff claims it to be.[2]

■ Truth of the words spoken is always a defense, and in case of a broadcast of matters of public interest, there is a qualified privilege on the part of the media which will be defeated only in a case of malice.

The amended complaint of the appellant alleged by way of damages the following:

As a result of the defendant's willful misconduct, the plaintiff suffered severe losses in sale of several products and was deprived of funds from investors and loaning institutions, said losses totaling $500,000.

As to the proof of damages, the evidence showed that appellant sold several items other than the Econo-jets and that his net profit for the fiscal year prior to the broadcasts was $97.19. The first broadcast was made November 14, 1973, and the second one was made December 31, 1973. October, 1973, sales for the Econo-jet were $3,181. At the end of November, 1973 (after the first broadcast), the gross sales had increased to $36,581 and by the end of December, 1973, the record showed monthly cash sales of $52,368 plus additional receivables of $40,000. The sales for January, 1974, were $35,045. These figures do not show any loss of sales of the Econo-jets due to any disparagement because of the broadcasts; rather, they indicate that the broadcasts may have helped the cause along.

The contents of the broadcasts are set forth and were in the form of news releases:

### Exhibit A

The Utah man who invented 'econojets' today said his device could cut the state's gasoline consumption a third if installed on all cars. Howard Rock also said his replacement carburetor idle screw fights pollution and increases power in addition to saving gas. Lynn Packer reports:

Econojets are sold in several Utah stores for $5.95 a pair. The inventor says they cost 20 cents a pair to manufacture—but royalties, packaging, marketing, and profits drive the price up.

Econojets replace the idle screws already on an engine's carburetor. The difference: A hole through the econojet—admitting a stream of air—supposedly creates a better fuel mixture.

Econojet advertising says the Utah product can add up to six miles per gallon. And the company has a stack of customer letters which supports their claims.

But there are skeptics. A New Hampshire auto expert says the idea dates back to 1939. A. J. White said the device can slightly increase mileage by leaning the fuel mixture. But White said the leaner mixture created by the units he's seen could caused burned valves and the hole could admit dust into the engine.

A local auto executive said he personally thinks such devices are a waste of money. And Dr. Grant Winn of the Utah

---

1. 50 Am.Jur.2d, Libel & Slander, Sec. 546; *Diefenderfer v. Totman*, 73 Wyo. 409, 280 P.2d 284 (1955); Restatement of Torts 2d, Sec. 624; *Dooling v. Budget Publishing Co.*, 144 Mass. 258, 10 N.E. 809 (1887).

2. Restatement of Torts 2d, Sec. 634 b.

Air Conservation _____ said the econojets would be unlawful if they alter for the worse—a car's air pollution control equipment.

Inventor Rock says thirty thousand units in successful operation prove the skeptics wrong. He says he is now developing a new engine that will yield 60–70 miles per gallon. And to top that the Utahn says he's close to a cure for cancer and the common cold.

*Exhibit B*

A Utah firm which sells what it says are economy carburetor needles has sold 900 Thousand Dollars worth since October. A spokesman for Direct International Buyers Association says his company has put 150 thousand units into buyer's hands.

Tony Kraatz, speaking for the Utah company—says Econojets are now being sold in many major U.S. cities. The units replace a car's carburetor idle needles, and are supposed to increase gas economy up to six miles per gallon.

Last month KSL News sent a set to Motor Vehicle Research Laboratories in New Hampshire. In his return letter Director A. J. White said in his opinion the jets do not improve mileage. White said, further, that the rules of the U.S. Clean Air Act prohibit disturbing a car's existing idle screws. And he said replacement idle jets could cause engine damage.

A spokesman for econojets said his product was being tested by the New Orleans Police Department, and the test was going 'very well.' But in New Orleans Captain Herman Saacks today said he's noticed no gas mileage improvement with the jets installed in his personal police car.

Tony Kraatz with econojets insists his product does work. Kraatz says the company's 1975 Camero has gone from 8 and a half to 14 miles per gallon with econojets. As to their legality, Kraatz said he's heard opinions both ways.

■ As to the two broadcasts, testimony failed to show that any part of the statements were false, except as to the amount of sales actually made. Tony Kraatz, Product Manager for Direct Import Buyers' Association, testified and admitted that he had given Mr. Packer the wrong figure by guessing at the total sales volume during their conversation. The newscaster cannot be held liable for accurately reporting erroneous information when he believes the source to be reliable and truthful.

A newsman has a duty to verify his facts, but that duty does not mean he must report only favorable information—rather, he must report accurately and in good faith *any* facts that he reasonably believes to be based on truth. And it is immaterial whether the inferences or opinions reported are right or wrong.[3] In *Ogden Bus Lines v. KSL, Inc.,*[4] at p. 225 we said:

> . . . The right of comment is not restricted to a restatement of the naked facts. As a general rule it may include the right to draw inferences or express opinions from facts established. The soundness of the inferences or opinions is immaterial whether they are right or wrong, provided they are made in good faith and based upon the truth. . . .

■ The evidence shows that Mr. Packer made inquiries and extensive investigations to verify the truth of appellant's claims before releasing the story over the air. He sought the opinions of experts from several sources throughout the country and obtained test results on the Econo-jet needle. Some of the experts were skeptical and some found the needle didn't work as claimed. Some believed the theory plausible and expressed support for the device. Mr. Packer merely reported all these findings but did not at any time draw his own conclusions as to the truth or falsity of appellant's claims.

Since there were no false statements made and since the statements were not

---

**3.** *Ogden Bus Lines v. KSL, Inc.*, Utah, 551 P.2d 222, 225 (1976).

**4.** *Id.*

proved to be defamatory so as to be actionable under the law, it cannot be said that defamation of appellant's business exists.

■ The record does not support a finding of actual malice in the case now before us, and in the absence of a showing of actual malice, it is within the power and duty of the court to rule as a matter of law that no malice existed.[5]

■ The instant case first came before us in 1975 as an appeal from a summary judgment in respondent's favor.[6] We held that the summary judgment must be reversed because a jury question on malice existed. We also stated that proof of malice may be shown by "an improper motive such as a desire to do harm or that the defendant did not honestly believe his statements to be true or that the publication was excessive."[7] At the time that opinion was written, the claim made by appellant was defamation of character and the malice standard given was the proper standard to be used for defamation suits when the person being defamed was not a public official or a public figure. However, it is now clear that this case involves, not defamation of character, but defamation of a product of a business and the correct standard to be applied is that of actual malice. We, therefore, overrule that provision in the earlier case which indicates that actual malice would not be required under this particular set of facts.

■ Appellant sought to prove malice by stating that respondent did not report information favorable to his position and by attempting to humiliate and discredit the inventor (not the appellant) of the Econo-jet with the ending comment, "And to top that the Utahn says he's close to a cure for cancer and the common cold."

The evidence shows, however, that respondent reported a fairly balanced account of a controversial matter; that, in fact, he withheld several facts that were actually adverse to appellant's position as to the effectiveness of the Econo-jet needle. The fact that some expert opinions contradicted appellant's statements cannot support an inference that those statements were false. It merely points to the existence of a controversy upon which comment and criticism is proper.[8]

Mr. Packer testified that the inventor of the Econo-jet told him the following:

Q. And then how did it come about he (the inventor) mentioned the cure for cancer and the common cold?

A. He volunteered the information. We had a long conversation chatting about what he had done and what inventions he was working on. And there were others that he had mentioned. And he mentioned that he had a cure for cancer and the cold.

Q. Did he say he had a cure or that he was close to a cure?

A. Well at one point he said he had a cure. And then later on he said that he was working on it. In fairness to him I just picked the statement where he said that he was close to a cure because he had changed his position while we were conversing.

■ The foregoing testimony was uncontroverted and no objection was made to it at trial. It seems clear that not only did respondent report an accurate statement volunteered by the inventor, but he demonstrated his good faith when he elected to report the least damaging version of what could appear to be a rather overstated claim. No malice can be imputed to these remarks.

Nothing in the way respondent verified or reported the story given him by appellant supports a claim of actual malice. Rather, it appears that respondent did as much as could reasonably be expected of any newsman to report accurately both sides of a controversial issue.

---

5. *Id.*

6. *Direct Import Buyer's Association v. K. S. L., Inc.*, Utah, 538 P.2d 1040 (1975).

7. *Id.* at 1042.

8. *Ogden Bus Lines, supra* at 225.

■ The issue that respondent's broadcast was the proximate cause of appellant's loss of sales has already been disposed of in the foregoing discussion. As to appellant's claim that it was prejudicial error to refuse admission of testimony on the issue of proximate cause, it need only be said here that the testimony complained of was later entered into the record when counsel rephrased the question. Appellant is not in a position to claim that prejudicial error was committed because its leading question was denied admission by the court, especially in light of the fact that it was later allowed into evidence when counsel properly framed the question.

The ruling of the trial court in directing a verdict at the conclusion of the evidence was proper and the judgment is affirmed. Costs are awarded to respondent.

CROCKETT, MAUGHAN, WILKINS and HALL, JJ., concur.