**G. Andrew LAWRENCE, Appellant,**

v.

**Frank E. MOSS, Appellee.**

**No. 79–1922.**

United States Court of Appeals, Tenth Circuit.

Argued Oct. 14, 1980.

Decided Jan. 13, 1981.

Matthew A. Kane, Washington, D. C. (Kane & Koons and Ronald C. Barker, Washington, D. C., with him on briefs), for appellant.

Donald B. Holbrook, Salt Lake City, Utah (D. Miles Holman and Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, with him on brief), for appellee.

Before SETH, BREITENSTEIN and BARRETT, Circuit Judges.

BREITENSTEIN, Circuit Judge.

In this diversity action for defamation and slander, the district court sustained defendant's motion for summary judgment on the grounds that the plaintiff was a public figure, who could recover only on a showing of actual malice, and that the record did not present any question of fact on the existence of actual malice. We reverse and remand for trial.

The case was filed in the United States District Court for the District of Columbia and transferred to the District of Utah pursuant to 28 U.S.C. § 1406(a). A United States district judge from the District of New Mexico was designated to handle the case. The incidents giving rise to plaintiff's slander claim arose during the 1976 campaign for the election of a United States Senator from Utah.

The incumbent, defendant-appellee Frank E. Moss, was opposed by Orrin G. Hatch, the eventual winner. Plaintiff-appellant, W. Andrew Lawrence, assisted the Hatch campaign in various capacities during September and October, 1976. The slander is based on an October 26, 1976, interchange between defendant Moss and an unidentified reporter at a Utah press conference. The undisputed record shows the following:

"*Question* : 'Mr. Richards said that you allege that Coors and other out-of-state extremists are running Hatch's campaign. Do you think they are running the campaign, or is it just that they have donated $5,000 bucks?'

*Mr. Moss* : 'I think they have done both. They put in the money to begin with to get it started and they set the tone of what the campaign would be. There are a lot of advisers. Besides Mr. Coors, there's Ernest Wilkinson and Leon Skousen who are local people that are advising Mr. Hatch, but a young man named Andy Lawrence has been here. Mr. Hatch, in a joint appearance that we had, admitted that Andy Lawrence had been here as a consultant. Well, I know about Andy Lawrence. He was the bag man for Spiro Agnew. And he worked for CREEP. And he was sent out here by these right wing organizations to assist in this campaign. Now Mr. Hatch said Andy Lawrence is now gone. And I have to believe him. I haven't seen him. But he was here and he did work for a considerable period of time here.'

*Question* : 'What do you mean when you say he was a "bag man" for Spiro Agnew?'

*Mr. Moss* : '(He) picked up the money Spiro would get.' "

██ Plaintiff claims that the reference to "bag man for Spiro Agnew" is slanderous per se because it implies participation in bribery or receipt of illegal campaign contributions. A plaintiff who is a public figure must prove "actual malice" to recover for defamation. See *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–280, 84 S.Ct. 710, 725–726, 11 L.Ed.2d 686, and its progeny discussed later. The first question is whether plaintiff is a public figure. The grant of summary judgment was based on the complaint, answers to interrogatories, responses to requests for admissions and for production of documents and depositions. The facts pertaining to the activities of the plaintiff are not contested.

In his early youth plaintiff was interested in politics. From January, 1970, through May, 1972, he served on the staff of Vice-President Agnew and participated in the "decision making process." In June, 1972, he joined the Committee for the Reelection of the President (CREEP) as the deputy director of administration with oversight of various political groups. In December, 1972, he was employed as "special assistant to the Assistant Administrator of the General Services Administration" in Washington, D. C. Charges of improper conduct were brought against him and dropped after his January 25, 1974, resignation.

In April, 1975, plaintiff was employed by the United States Department of Commerce, and was terminated the next month after publication of an article in the *Washington Post* which called attention to his background, his connection with General Services, and his new employment. In May, 1976, plaintiff took courses in campaign management sponsored by the Republican National Committee and by the National Conservative Political Action Committee. After completion of the courses he raised funds in several states for various purposes. In August, 1976, he became an independent political campaign consultant and was retained by the National Conservative Political Action Committee, the Hatch for Senate Committee, and the Conservative Victory Fund.

Because the events pertinent to this lawsuit all occurred in Utah, plaintiff's status in Utah is of prime importance. Before the 1976 election campaign, plaintiff had no Utah connection. He came to Utah in September, 1976, and from then until his October departure he assisted the Hatch campaign as a private consultant in political polling, strategy, voter targeting, volunteer organization, advertising, writing, fund raising and general campaign management.

*New York Times v. Sullivan*, supra, protected the news reporting media against liability to public officials in the absence of actual malice. Plaintiff here was not a public official. New York Times protection was extended to public figures by *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094, decided together with *Associated Press v. Walker*. Butts, a well known and respected football coach, was subject to the usual publicity arising from the popular interest in the sport. Id. at 136, 87 S.Ct. at 1981. Walker had thrust himself into the limelight by organizing opposition to federal intervention in school integration and by statements on radio and television and in press conferences. Id. 140–141, 159, 87 S.Ct. at 1983–84, 1993. Both Butts and Walker were held to be public figures.

*Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296, considered a suit by a distributor of nudist magazines against various news media. The eight judges participating in the decision expressed their views in five separate opinions, none of which commanded more than three votes. The plurality opinion of Justice Brennan concluded, Id. at 44, 91 S.Ct. at 1820, that "all discussion and communication involving matters of public or general concern" were protected by the New York Times rule.

In *Gertz v. Welch*, 418 U.S. 323, 351–352, 94 S.Ct. 2997, 3012–13, 41 L.Ed.2d 789, the

plaintiff was held not to be a public figure notwithstanding his authorship of legal books and articles, his activities in professional and civic organizations, and his role as plaintiff's attorney in a well publicized lawsuit against a police officer. The Court declined to follow the Rosenbloom extension of New York Times and said, Id. at 343, 94 S.Ct. at 3008, "the state interest in compensating injury to the reputation of private individuals requires that a different rule should obtain with respect to them." The Court summarized its decision thus, Id. at 347, 94 S.Ct. at 3010:

> "We hold that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard for a publisher or broadcaster of defamatory falsehood injurious to a private individual."

Relying on *Gertz*, the Court in *Time, Inc. v. Firestone*, 424 U.S. 448, 453–455, 96 S.Ct. 958, 964–65, 47 L.Ed.2d 154, held that the plaintiff was not a public figure because she did not occupy a role of special prominence and had not thrust herself into the forefront of public controversy to influence the resolution of issues.

*Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411, reversed a lower court decision that a scientist who had published extensively and received public grants for research projects was a public figure. The Court held that the essential ingredient of inviting public attention or comment was missing. The Court pointed out that the plaintiff had not thrust himself or his views into public controversy to influence others and had not assumed public prominence in the debate over the public funding of his projects.

*Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450, was a libel suit against the publisher of a book which identified the plaintiff as a Soviet agent. Relying on Gertz, the Court held that the plaintiff was not a public figure. Id. at 167, 99 S.Ct. at 2708. In so doing, the Court expressly rejected, Id., the Rosenbloom doctrine "that the New York Times standard should extend to defamato-

ry falsehoods relating to private persons if the statements involved matters of public or general concern."

In the case at bar several sources brought the attention of Moss to the Utah activities of the plaintiff. In response to a newsman's question, Hatch acknowledged participation of plaintiff in the campaign. The expense reports of Hatch showed payments to plaintiff. Russ Hemingway, a Director of the National Committee for an Effective Congress, informed Moss of plaintiff's involvement with GSA, Agnew, and CREEP. Moss had read the *Washington Star* article referring to plaintiff. Mary Jane Due, a Moss employee upon whom Moss relied for information and advice, inquired of Hal Wolfe, a Washington, D. C. representative of the National Committee for an Effective Congress and was told that plaintiff was an "Agnew bag man," and had been a consultant and fund raiser for right-wing committees. Ms. Due relayed the information to Moss.

Plaintiff's activities were in the background and concerned with administrative organization. He did not thrust himself into public prominence in Utah. So far as the record shows, he made no speeches and no radio or television appearances and did not write for public consumption. If he was a public figure, so are all those who participate inconspicuously in political action designed to influence an election.

■ Plaintiff is a private individual who claims that he was defamed by another private individual. The First Amendment rights of a private individual can rise no higher than the rights of the news media considered in the New York Times line of cases. *Wolston* says, 443 U.S. at 167–168, 99 S.Ct. at 2708, that

> "A private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention. * * * * A libel defendant must show more than mere newsworthiness to justify application of the demanding burden of *New York Times*."

The participation of plaintiff in the Hatch campaign may have made him newsworthy

but did not transform him into a public figure. The status of the individual claiming to be defamed is the controlling factor, not the nebulous interest of the public in a matter with which he is inconspicuously involved. See *Littlefield v. Fort Dodge Messenger*, 8 Cir., 614 F.2d 581, 583–584. On the record presented, plaintiff was not a public figure at the time of the alleged defamatory statement.

■ *Gertz* recognized the state interest in compensating injury to the reputation of a private individual. 418 U.S. 347–348, 94 S.Ct. at 3010–3011. Following *Gertz*, we held in *Dixson v. Newsweek, Inc.*, 10 Cir., 562 F.2d 626, 629, that Colorado law controlled in a libel action brought by a private individual. Accordingly, Utah law controls in this case. The alleged defamation occurred in Utah and related to Utah events.

■ A pertinent Utah decision is *Ogden Bus Lines v. KSL, Inc.*, Utah, 551 P.2d 222, a libel and slander action by a private individual and private companies against a broadcaster's statements relating to a matter of public interest. In denying recovery the court reviewed pertinent Utah decisions and quoted the following rule with approval. Id. at 224:

> "It is firmly established that matters of public interest and concern are legitimate subjects of fair comment and criticism, not only in newspapers, and in radio and television broadcasts, but by members of the public generally and such comments and criticisms are not actionable, however severe in their terms, unless they are made maliciously . . . ."

"Maliciously" was not used in the sense of New York Times because the court said that as no public official or candidate was involved "actual malice need not be shown" in a case relating to a matter of public concern. Id. at 225.

The court quoted with approval, Id. at 226, the statement in *Direct Import Buyers Association v. KSL, Inc.*, Utah, 538 P.2d 1040, 1042, that:

> "The malice which plaintiff must show in order to overcome a conditional privilege is simply an improper motive such as a desire to do harm or that the defendant

did not honestly believe his statements to be true or that the publication was excessive."

Plaintiff argues that this Utah rule conflicts with the *Gertz* rejection of Rosenbloom. See *Gertz*, supra, 418 U.S. at 343, 94 S.Ct. at 3008, and *Wolston*, supra, 443 U.S. at 167, 99 S.Ct. at 2708. *Gertz* permits, 418 U.S. at 347, 94 S.Ct. at 3010, each state to fix its own standard of liability for defamation in a suit between individuals so long as it does not impose liability without fault. Utah has abridged no right given by the federal Constitution but, in the area of defamation, has chosen to protect speech related to matters of general or public concern. The choice does not offend the federal Constitution.

■ In granting defendant's motion for a summary judgment, the trial court referred to "the absence of any evidence in this case which would create a genuine issue of material fact on the question of 'actual malice.'" The ruling is consistent with its decision that plaintiff was a public figure. Our rejection of that decision impels consideration of the propriety of a summary judgment.

In review of the grant of the defense motion for summary judgment, "we must construe the facts in a way most favorable to the nonmovant [the plaintiff]." *Buell Cabinet Company, Inc. v. Sudduth*, 10 Cir., 608 F.2d 431, 433. Intent is an intangible factor best left for determination of the fact-finder after a full trial. Id.

Moss said at the press conference that plaintiff was a "bag man for Spiro Agnew." The record contains no claim by the defense that the statement was true or a proper expression of opinion. The question then under the Utah decisions in *Import Buyers*, 538 P.2d at 1042, and *Ogden Bus Lines*, 551 P.2d at 224–226 is whether the statement was made with an improper intent to do harm, or with knowledge that the statement was false, or with reckless disregard for whether it was true or not. Resolution of these issues entails the drawing of factual inferences, a function of the fact finder.

The suggestion has been made that libel and slander cases are excepted from the

general rule that summary judgment is improper when intent is an issue. The reason given is that such cases threaten the free exercise of the rights of speech and press. See Wright and Miller, Federal Practice and Procedure: Civil, § 2730, pp. 590–592.

*Hutchinson*, supra, 433 U.S. at 120, n. 9, 99 S.Ct. at 2680, n. 9, recognized that malice calls in question a defendant's state of mind and does not lend itself readily to summary judgment. The propriety of summary judgment was not before the Court in that case. It may be that in some cases brought against a member of the news media summary judgment is proper as a screening device to prevent unnecessary harassment. The instant case is not of that nature.

In *Ogden Bus Lines*, supra, the Utah court upheld a summary judgment in a news media suit when the record showed the truth of one statement and the court held that the other challenged statement was legitimate editorial comment. Such is not the case here. On the record presented the grant of summary judgment was improper.

Reversed and remanded for trial on the merits.