**Martin KATAHN and Katahn Associates, Inc.**

v.

**The HEARST CORPORATION, Good Housekeeping Magazine, John Mack Carter, The Good Housekeeping Institute, Amy Barr, Nutrition Diet and Fitness Center, Delia A. Hammock, and Barbara J. Gerwitz.**

No. 3:90–0193.

United States District Court, M.D. Tennessee, Nashville Division.

Aug. 7, 1990.

---

**1.** T.C.A. § 47–18–104(b)(12).

**2.** T.C.A. § 47–18–104(b)(26).

L. Lee Wilson, Zumwalt, Almon & Hayes, Larry D. Woods, Woods & Woods, Nashville, Tenn., for plaintiffs.

Alfred H. Knight, Willis & Knight, Nashville, Tenn., for defendants.

## MEMORANDUM

JOHN T. NIXON, District Judge.

Pending before the Court is the defendants' motion for summary judgment and the plaintiff's opposition thereto.

## FACTS

Plaintiff Martin Katahn is a professor of psychology at Vanderbilt University, the Director of the Weight Management Program at Vanderbilt, and the author of several books relating to weight loss and control. His most famous works are The Rotation Diet and The Rotation Diet Cookbook. The underlying premise of the diet described in these books is that by rotating periods of low calorie intake with periods of higher intake, the dieter is able to prevent the metabolic slowdown that accompanies weight loss and thus avoid regaining previously lost weight.

The March, 1990 issue of Good Housekeeping magazine contained a brief article stating that the concept of rotating caloric intake was not an effective method of dieting, and therefore the diet laid out in the plaintiff's books was a poor strategy for weight loss. The article, which appeared on a monthly page entitled "Nutrition, Diet, and Fitness," is based on a study performed at Vanderbilt University which compared a group of dieters on a varying caloric diet with a group that followed a constant calorie diet, and determined that the rotation of calorie intake has no effect on weight loss.

The article reads as follows:

### THE DIET THAT COULDN'T

The Once Highly Touted Rotation Diet Doesn't Work. Here's Why!

Remember the Rotation Diet that made its rounds in the U.S. in 1986? It was based on the premise that alternating daily calories between 600, 900 and 1200 would speed weight loss by preventing the metabolic slowdown caused by constant low calorie dieting. To find out whether rotation works, researchers at Vanderbilt University put one group of moderately obese women on a varying caloric diet with or without exercise while another group followed a constant calorie diet with or without exercise. In all cases, the diets provided an average of 1200 calories per day over the twelve week period. The results? The researchers discovered that rotation did not speed up metabolic rate, and the weight loss for both groups of no exercise dieters was the same. What did make a difference was exercise. Individuals on

either diet who walked regularly lost significantly more weight than those who did not exercise. The bottom line: don't rotate your diet from day to day—instead, get up out of your chair and rotate your body by exercising!

The plaintiff claims that the article oversimplifies and misstates both the Rotation Diet *and* the Vanderbilt study, and its conclusion that the rotation diet does not work is incorrect. He brought this libel suit as a diversity action, alleging that the defendants' false statements about the diet called into question his competency, veracity and trustworthiness, and caused significant damage to his reputation.

## DISCUSSION

### a. *The Standard for Summary Judgment*

Upon a motion for summary judgment the court must first determine whether there is genuine dispute about any issue of material fact. *See, e.g., Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As the Supreme Court recently clarified, the standard of materiality requires that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment." 106 S.Ct. at 2510.

"... [R]ule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,* 106 S.Ct. at 2510. The nonmoving party "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id.*

### b. *The Plaintiff's Claim of Defamation*

When a federal court's jurisdiction is invoked under diversity of citizenship pursuant to 28 U.S.C. § 1332, the court must apply the substantive law of the state in which it is situated. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■■■ Under Tennessee law, a statement is not actionable unless it constitutes a serious threat to the plaintiff's reputation; a libel does not occur simply because the subject of the publication finds the publication annoying, offensive or embarrassing. *Stones River Motors, Inc. v. Mid–South Pub. Co.,* 651 S.W.2d 713 (Tenn.App.1983). The words must be reasonably construable as holding the plaintiff up to public hatred, contempt or ridicule, and they must carry with them an element "of disgrace." *Id.* See W. Prosser, Law of Torts, § 111, p. 739 (4th Ed.1971). Thus, to prevent entry of summary judgment, the plaintiff must first show that the article is capable of defamatory meaning within the standard articulated by the courts of Tennessee.

■■■ The Court finds that the Good Housekeeping article is not sufficiently defamatory under the Tennessee standards to justify an action for libel.[1] The article was an impersonal, scientific critique of the plaintiff's books and of the notion that rotating calories is an effective method of dieting; nothing in the article could reasonably be taken as "holding the plaintiff up to public hatred, contempt or ridicule." *Stones River Motors, Inc. v. Mid–South Pub. Co.,* 651 S.W.2d at 719. The plaintiff claims that the article implies incompetence or dishonesty on his part, but the Court believes that this is not the plain meaning of the article.

The worst conclusion that a reasonable reader could reach about the plaintiff from reading the article is that one of his ideas for weight loss was unsuccessful; there were no explicit personal or professional attacks on him, nor was there any implica-

---

**1.** The parties disagree as to whether the scientific data and conclusions contained in the Vanderbilt study and reported in the Good Housekeeping article are true or false; for the purposes of this motion, however, the Court must resolve all doubts in favor of the nonmoving party, and will therefore assume that the defendants' data was faulty.

tion of incompetence or underhandedness.[2] Modern dieting is constantly shaped by new findings and methods, and conflicting scientific studies are common. Against this background no reasonable jury could find that an article stating that one weight loss method, calorie rotation, does not work while another method, exercise, does work, holds the proponent of the first method up to public hatred, contempt or ridicule.

Other courts have held that in order for a critical discussion of an individual's work to be actionable, it must contain personal attacks against the individual. For example, in *Preveden v. Croation Fraternal Union of America,* the court denied the defendant's motion to dismiss where the defendant called the plaintiff a "low down soul," referred to the plaintiff's book as "teeming with ugly words, of which even a mule driver would be ashamed," and suggested that the plaintiff brought the lawsuit to raise money to publish the book. 98 F.Supp. 784 (W.D.Pa.1951). The Good Housekeeping article, however, contains no such attacks on the plaintiff and therefore cannot provide the basis for a libel action.

The plaintiff claims that the headline and subheading of the article are especially derogatory, and lend support to his contention that the article is a personal attack on him. Although "The Diet that Couldn't" and "The Once Highly Touted Rotation Diet Doesn't Work: Here's Why!" are blunt, direct indictments of the Diet, there is no indication in the article that they are to be taken as attacks on the *plaintiff.* In fact, the brief and concise nature of all the articles contained on the "Nutrition, Diet and Fitness" page suggest that the title and subheading at issue were designed to provide a catchy and concise summary of the article's contents, rather than denigrate or humiliate the plaintiff.

Courts have consistently reached similar conclusions in cases where a plaintiff has brought an action for defamation based on a critical analysis of his work. See *Katz v. Gladstone,* 673 F.Supp. 76 (D.Conn.1987) (applying Pennsylvania law); *Redco Corp.*

*v. CBS,* 758 F.2d 970 (3rd Cir.1985); *Direct Import Buyers Association v. K.S.L., Inc.,* 572 P.2d 692 (Utah 1977). In *Katz* the plaintiff compiled "Custer in Photographs," a history book containing a collection of photographs of the late General. The author sued for libel after the defendant wrote several critical reviews which pointed out numerous inaccuracies in the book, and said that it had "little value" to historians because it lacked a bibliography, an index, footnotes, and contained only scant analysis. The plaintiff claimed that the reviews contained innuendo suggesting that "the plaintiff was not qualified as a historian of the works of General Custer." 673 F.Supp. at 79.

The court granted the defendant's motion for summary judgment on the grounds that the reviews attacked the plaintiff's work, rather than the plaintiff himself. The court stated: "The criticism ... is of the book itself and contains no attacks, libelous or otherwise, on plaintiff himself, as opposed to the work." 673 F.Supp. at 81. In addressing the plaintiff's claim that the reviews defamed him by innuendo, the court reasoned:

"... it is fair to say that these observations about the book also reflect upon its author. But what do they reflect? That the author is capable of making mistakes, and that he has chosen to produce a book of one sort rather than of another sort, or perhaps that he has not achieved his own ambitions for the book. It is a distortion of the words actually written to find in them the accusation that the author is not qualified to produce a book of the sort he produced, or to do so with fewer errors, or even to produce a book of the sort that the reviewer would have preferred." 673 F.Supp. at 82.

The case presently before the Court is similar to *Katz* because the defendant has published an unfavorable evaluation of the plaintiff's work, and the plaintiff is claiming that the poor review is a personal attack on him. The cases are slightly different because the Good Housekeeping article

2. The plaintiff is never mentioned by name, so there is an issue about whether the article is sufficiently "of and concerning" the plaintiff to justify an action for libel. The plaintiff alleges

that he is so well known that his name is synonymous with the Rotation Diet, and for the purposes of this summary judgment motion the Court will accept this allegation as true.

includes the results of medical tests which could be more damaging to the books at issue than a mere bad review. This distinction is without significance, however, because both cases are devoid of an untrue, defamatory statement about an individual. In the absence of such an attack, the divergent views about science and history contained in the two cases are precisely the type of free and open discourse the First Amendment was designed to protect.

It appears to the Court that no reasonable jury could find the Good Housekeeping article sufficiently defamatory towards the plaintiff to meet the necessary standards under Tennessee law. Because a showing of defamation is an essential element of the plaintiff's claim and he will bear the burden of proving it at trial, the defendant's motion for summary judgment is GRANTED.

An order to this effect will be entered contemporaneously with this Memorandum.